The People of the State of New York ex rel. Francis Yaklin, Appellant, *v.* Josephine Yaklin, Respondent.

Fourth Department, November 1, 1963.

*Brennan, Mintz & Birzon* (*Joseph D. Mintz, Richard F. Griffin* and *Thomas F. Wolfe* of counsel), for appellant.

*Catherine Rowley Lautz* for respondent.

*Per Curiam.* In this habeas corpus proceeding instituted by the appellant father to secure the custody of two children of tender years Special Term granted custody to the respondent mother. The proceeding presents several unusual and complex problems which cannot be resolved without reference to a prior action, to a prior writ of habeas corpus, and to negotiations between the parties.

Sometime prior to November 16, 1957 respondent instituted a separation action and appellant counterclaimed for a divorce. On that date the parties discontinued the suit by execution of a separation agreement which provided, among other things, "that the husband [appellant] shall have the custody and control" of the children and the wife [respondent] "shall have the right of temporary custody of the said children" on week ends.

About a year later the wife secured a writ of habeas corpus seeking to effect a change in the custody provision of the agreement. By order of Justice Moule, dated March 18, 1960, which recites that he heard witnesses and "having reviewed the Erie County Probation Report of March 5, 1959" the court found that "the Welfare of the said infants will best be promoted by awarding custody of them to their father, Francis Yaklin". The order further continued the same visitation

rights given the mother in the separation agreement. None of the papers in that proceeding are in the record except Justice MOULE's order. It is of interest that in that document the court struck out reference to the separation agreement and also struck a recitation that "the Court having found him [father] to be in all respects a fit and proper person to have their custody, and having found the said infants will receive better care and attention, devotion, education and upbringing from him than from the infant's mother who is the petitioner herein." Having awarded custody to the father the stricken material would seem to have been an essential finding to that determination. This action of the court seems to express something less than confidence in its determination and one receives the impression that the court was constrained to make his decision by selecting the lesser of two possibly unfit custodians for these infants.

Nearly three years after the institution of said former proceeding and about 20 months after Special Term's order the mother secured an order to show cause requesting an amendment and modification of Justice MOULE's order by changing the custody provision and granting custody to her. She further asked that the defendant [father] be punished for removing the children from the State without permission of the court, claiming that this was in violation of her visitation rights. In her affidavit in support of this order the mother alleged that on September 13, 1961 the father moved to Michigan and took the children with him, and that this prevented her from exercising her rights of visitation; that shortly thereafter she went to Michigan and brought back the children to live with her in New York State. Three days after its issuance, and before its return date, the father secured the writ of habeas corpus which is the subject of this appeal.

In his petition in support of the writ the father recites the history given above and alleges that his removal to Michigan was caused by transfer by his employer, the Chevrolet Co., and resulted in a promotion and greater earnings and opportunity for advancement. He also alleges that the welfare of the children requires that custody of them be returned to him, with such visitation rights to the mother as would be proper, for "her present custody and detention is wrongful and harmful in the premises". It is in this posture that the proceeding came on for the hearing which we are reviewing.

At the outset the court inquired into the purpose of the writ. The father's attorney explained that he sought only to secure the return of custody, and the court said: "I am not

in a position to review the order of a Judge of coordinate or equal jurisdiction '' (referring to Justice Moule's order). The father's attorney agreed with this statement. There was then considerable discussion as to the need to send the matter back to Justice Moule, which may well have been the proper procedure, but nevertheless the court proceeded to take the matter and hear '' why the best interests of the children are not being served, which reasons were not before Judge Moule * * * I am starting *de novo* in this writ before me.''

Despite continued statements by the court that he wanted evidence as to change of circumstances since Justice Moule's order, all the testimony as to the alleged misconduct of the mother, which from the categorical statement of the father charged her with an act of adultery to which he was a witness, pertained to periods prior to the proceedings before Justice Moule. There was also testimony as to an alleged girl friend of the father whom he had been '' going out with '' during the same period. The record is replete with accusations of loose conduct by both parties, all of which is a rehash of events which took place prior to 1958 and which probably was before Justice Moule.

In making his determination the court found that '' there has been a substantial change in circumstances here '' and that change was the single fact that the father had moved to Michigan. This, the court found, would materially affect the mother's visitation rights and on this sole ground he granted custody to the mother with the same rights of visitation to the father which the mother formerly had.

It requires no citation of authority to establish the historic and wise principle that children are the wards of the court and that their welfare, in a proceeding like the one at bar, is the paramount concern of the court. As has been so often quoted, the court '' acts as *parens patriæ* to do what is best for the interest of the child '' (*Finlay* v. *Finlay*, 240 N. Y. 429, 433). Important as this principle is, it was never intended that the court should entertain proceedings seeking a change in a decree awarding custody, unless there has been a change in circumstances or treatment since the decree which justifies the court's inquiry into the matter (*Ansorge* v. *Armour*, 267 N. Y. 492, 499). Although, as indicated, the hearing in the instant case contained accusations by both parties dealing with events which were in point of time prior to Justice Moule's decision awarding custody to the father, there was no testimony as to the conduct and morals of the parties since that time. Having bottomed his determination that there had been a sub-

stantial change in circumstances on the single issue of the father's residence in Michigan, the court should have accepted the suggestion of the father's attorney that proof be taken as to the fitness of the mother as of the date that the court awarded her custody.

The innuendoes and inferences raised by the parties should have impelled the court to require both parties to testify as to their circumstances since the first custody order, to determine which, if either, was a suitable person to have custody. It may well be that the court should have ordered the probation department or a social agency in the family field to have made a complete investigation and to have reported its findings to the parties and the court. Buttressed by such information, the court could then make a proper determination. It is for this reason that the matter is remanded to Erie County Supreme Court for a rehearing.

WILLIAMS, P. J., BASTOW, GOLDMAN, HENRY and NOONAN, JJ., concur.

Order unanimously reversed, without costs of this appeal to either party, and matter remitted to Erie County Supreme Court for further proceedings in accordance with the opinion.