CONSTANCE FULLER *vs.* DONALD L. FULLER.

Essex. May 16, 1974. — June 20, 1974.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Divorce,* Custody of child, Modification of decree.

Where a husband obtained a divorce from his wife on the ground of gross and confirmed habits of intoxication and was awarded custody of the parties' two young children, and he subsequently moved to a neighboring State and later married another woman who had a young child, the evidence heard on a petition by his former wife for modification did not, some two and one-half

years after the decree nisi, permit a conclusion that there had been such a change of circumstances as to show that a transfer of custody of the two children to the former wife would be in the children's best interests, and a decree then entered on her petition granting such a transfer must be reversed, although through association with Alcoholics Anonymous she had made a highly creditable recovery from alcoholism. [373-377]

PETITION for modification of decree of divorce filed in the Probate Court for the county of Essex on March 14, 1972.

The case was heard by *Mayo*, J.

*Rya W. Zobel* (*Alix Smullin* with her) for the libellant.
*David S. Mortenson* for the libellee.

KEVILLE, J. On November 17, 1970, Donald Fuller (Donald) was granted a decree of divorce nisi in a Probate Court from Constance Fuller (Constance) in an uncontested proceeding on the ground of gross and confirmed habits of intoxication. Donald also was given custody of their sons, Michael, who is now eight, and Mark, now six.

On March 14, 1972, Constance brought a petition for modification before another judge who on April 30, 1973, ordered that custody of the children be transferred to her. By order of a single justice of this court, Donald was given leave to file a late appeal from the decree of modification and the operation of that decree was stayed until further order of this court. That appeal is now before us with a transcript of the evidence but without a report of material facts.[1]

In this situation, all questions of law, fact and discretion are presented for our decision. The entry of the decree imports a finding of every fact necessary to sustain it and such implied findings of fact, based wholly or

---

[1] The record includes the reports of two investigators (G. L. c. 215, § 56A), the first appointed in connection with the libel for divorce and the second in connection with the petition for modification. The judge appears to have considered both reports in reaching his decision. See *Jenkins* v. *Jenkins*, 304 Mass. 248 (1939).

partly upon oral testimony, are not to be set aside unless we are satisfied, after giving to the oral testimony all the weight that the trial judge could justifiably attribute to it, that, nevertheless, his findings are plainly wrong. *Colbert* v. *Hennessey,* 351 Mass. 131, 134 (1966). *Gannon* v. *MacDonald,* 361 Mass. 851 (1972). Our examination of the evidence compels the conclusion that the ultimate finding of the judge, implicit in his decree, that it is in the best interests of the children that their custody be transferred from their father to their mother, is plainly wrong.

The pertinent facts appear to be largely undisputed. Constance and Donald were married in 1962. Following their marriage, Constance became increasingly addicted to alcohol. They were then living in Amesbury. While their younger son was still in diapers, Donald on several occasions was called home from his job by neighbors who had observed the children unattended on the street in various stages of dress. On these occasions he would usually find his wife unconscious in the house as a result of her drinking. During a five-week period in the early part of 1969 she had been arrested on three occasions for drunkenness and operating a motor vehicle while under the influence of intoxicating liquor. She was placed on probation upon the condition that she would consult a psychiatrist which she did until some time in 1970.

It was against this background that Donald took the children to live with his mother in Rochester, New York, for a period of three weeks. He then returned to Amesbury where he and the children occupied an apartment. Baby sitters cared for the children during the day and he took care of them at night. That situation persisted until mid-1971. Then the company for which he works as a plant foreman moved to Hillsborough, New Hampshire. He and the children moved there where his mother continued to help take care of the children until he remarried on July 1, 1972. He continues to live in Hillsborough with his second wife, Lorna, and her five-

year-old daughter by a prior marriage which terminated in divorce. At the time of the hearing on the petition for modification, they were expecting a child of their own.

They live in a rural area in a comfortable six-room house located several hundred feet from the nearest road. Donald works five days a week from forty to fifty hours and occasionally for a few hours on Saturday. He is active as a little league coach and in his church where the children go to Sunday school. The report cards of the older boy, Michael, indicate that he has gotten along well in the first grade of the local public school and is an excellent student. Both boys appear to be normal, well-adjusted children.

Donald's second wife is a chiropractor, and she has worked with her father in that profession in a nearby community on Saturdays. During the remaining time she is at home with the children. On the day she works, the children are either in Donald's care or in the care of a baby sitter. Donald has been completely coöperative in carrying out arrangements made for the children to visit their mother in Amesbury. These visits have been on a regular basis ever since the move to New Hampshire in 1971, and they appear to have given rise to but little friction.

Constance readily admits that she is an alcoholic and that during her marriage she was, on many occasions, hopelessly intoxicated until she became separated from her husband and the children. She joined Alcoholics Anonymous (A.A.) in August of 1969, and, after some initial difficulties, has been rehabilitated to the extent that she has remained sober since some time in the fall of 1970. She is an active member of A.A. She attends meetings of that organization during the evening on an average of three times a week and has made speeches at A.A. meetings in various communities in Massachusetts and New Hampshire. These meetings usually commence at 8:30 in the evening. She took the children to a few of these meetings until Donald objected.

She continues to reside in Amesbury in a three-bedroom house which she owns and which would provide adequate housing for her and the children. She is regularly employed as a private secretary to the owner of a machinery sales organization. Her employer, who is also a member of A.A., was one of her witnesses at the hearing for modification of the custody order. She works five days a week and occasionally for a few hours on Saturday. Were she to have custody of the children, she would continue to work regularly; but her hours of work could be adjusted to some extent so that she might spend more time with the children. She is committed to the realization that to sustain her resistance to alcohol, it will be necessary for her, during the remainder of her lifetime, to maintain active participation in A.A. because of the mutually supportive assistance which this activity is designed to bring to her and her fellow members in reënforcing their sobriety. However, to accomplish this, while maintaining custody of the children, will necessitate many evenings away from home and frequent use of baby sitters.

The original decree awarding custody to Donald must be presumed to have been right. It settled all questions in issue between the parties at the time it was entered. It was designed to endure until facts brought to the attention of the court required a change. *Hersey* v. *Hersey*, 271 Mass. 545, 554 (1930).

To warrant the transfer of custody from one parent to the other, following a determination of custody in a divorce proceeding, there must be a significant change in circumstances (*Hinds* v. *Hinds*, 329 Mass. 190, 191 [1952]; *Stevens* v. *Stevens*, 337 Mass. 625, 627 [1958]); and that change must be of sufficient magnitude to satisfy the governing principle by which the court must be guided in these cases, namely, whether the transfer of custody will be conducive to the welfare of the children. *Grandell* v. *Short*, 317 Mass. 605, 608 (1945). *Clark* v. *Clark*, 321 Mass. 682, 683 (1947). *Welker* v. *Welker*,

325 Mass. 738, 745 (1950). *Jones* v. *Jones,* 349 Mass. 259, 263 (1965). *Clifford* v. *Clifford,* 354 Mass. 545, 548 (1968).

We find nothing in this record to indicate that Donald has been in any respect an inadequate parent, or that his second marriage has been detrimental to the children. On the contrary, the evidence demonstrates that for the past four years he has been the steady and dependable parental influence in their lives. *Hersey* v. *Hersey, supra,* at 555. Although Constance has made a highly creditable recovery from the affliction of alcohol, that alone in our view is insufficient to warrant removing the custody of these children from a parent who has given them excellent care and to whom they are most accustomed and from a home environment which appears to be quite satisfactory. We feel also that the uncertainty which lingers from her earlier lack of capacity to care for the children (see *Smith* v. *Smith,* 361 Mass. 855 [1972]), coupled with the demands of her various activities, militates against her becoming the capable custodian of the children which their father has already proven to be.

We conclude, therefore, that the welfare of the children will be best served by having their custody remain in their father and by granting to their mother such visitation rights as shall be determined from time to time in the judgment of the Probate Court.

*Decree reversed.*