Daisy M. Hale *vs.* Nathan B. Hale, Jr.

Middlesex.  September 16, 1981. — December 22, 1981.

Present: Dreben, Kass, & Smith, JJ.

*Divorce and Separation,* Custody of Child.

In a proceeding for separate support, where it appeared that a probate
judge, in denying a motion by the parent having custody of minor chil-
dren for leave to remove the children from the Commonwealth, had
considered the children's need for weekly visitation by the noncusto-
dial parent but had not considered the advantages of the move with
respect to the emotional well being of the family, the potential stress
on the custodial parent if the move did not occur, or possible ad-
justments to the visiting schedules and support payments in favor of
the noncustodial parent if the move occurred, this court remanded the
case for consideration of these factors and, if desired by either party or
the judge, the hearing of additional evidence. [815-821]

Petition for separate support, and motion for leave to re-
move minor children from the Commonwealth, filed in the
Middlesex Division of the Probate and Family Court De-
partment on September 21, 1977, and October 16, 1980, re-
spectively.

The proceedings were heard by *Sullivan,* J.

*Wayne Soini* for the plaintiff.

*C. David Grayer* for the defendant.

Dreben, J.  After a hearing on the wife's petition for sep-
arate support and her motion for leave to remove the chil-
dren from the Commonwealth, a probate judge ruled that
she had justifiable cause for living apart, ordered her hus-
band to make child support payments, awarded her custody
of the two minor children,[1] but prohibited her from removing

---

[1] There was no dispute as to custody or the amount of child support pay-
ments.  The judge stated that the only issue in the case concerned the
wife's prayer to take the children to California.

them to California. This appeal by the wife is from that portion of the judgment which prohibits her from taking the minor children to California. Because we are concerned that the judge may have had too narrow a focus in making this decision of critical significance to the lives of both of these parents and their children, we reverse and remand for further proceedings.

The judge made findings and we have a transcript of the evidence. Accordingly, all "questions of law, fact and discretion" are before us. *Felton* v. *Felton*, 383 Mass. 232, 239 (1981).

We state the facts as disclosed by the record. After their marriage in New York in 1961, the parties, because of the husband's career assignments in the Air Force, lived in various places including New York, Oklahoma and Germany. While the husband was in Vietnam, the wife lived with her aunt in New Jersey. Three daughters were born to the couple, one in 1962, one in 1966 and the third in 1972. The family moved to Massachusetts in 1971 because of another service assignment of the husband. The husband and wife separated in 1972, the wife continuing to live on base until the husband's retirement from the Air Force in 1975.

The wife wishes to move to California where her sister lives with her husband and three children. Her sister is buying a new house in the community in which she now resides, and the wife intends to rent her sister's present home, which is a single family house considerably more spacious and comfortable than the wife's present high rise apartment in Lynn. The wife would like to be near her sister and considers the move advantageous to the children. She has investigated the school system, and her sister has had good experience with the local schools. One of the minor daughters has school problems; the other is an excellent student.

The wife, a career civil servant, considers her present job in Massachusetts a "dead end," yet very demanding. She is eligible for a transfer to a Federal field office in California where the atmosphere is less pressured. The move would enable the wife to change careers and become a food pro-

gram specialist. While the salary in California would be approximately the same as the salary she is now earning ($15,300), the wife views the California opportunity as a career advancement.

The husband is opposed to the move. After his retirement from the Air Force, the husband continued his education and is now a consultant to the Massachusetts Housing Finance Agency. His annual income, including his Air Force pension, is about $25,000. While he was in school, the children were on welfare, and the husband did not see them frequently. He, however, now has an excellent relationship with his minor daughters and visits with them about once a week. The eldest daughter, who is over eighteen, lives with her father. She previously had a strained relationship with her mother and had run away from home several times.

All three daughters testified. The oldest indicated that she did not want her sisters to leave, and that she could help the sister who is not doing well in school. Christy, age thirteen, said that she did not want to go to California because her friends and family are here. Leslie, age nine, also stated, "[I]t would be better if we stayed right here and see Shelley [oldest sister] and our father."

The judge, after reciting some of the foregoing facts, initially made three findings and rulings as to removal[2] on the basis of which he prohibited the wife from removing the children to California. After the wife moved for relief from judgment, the judge made some additional findings.[3]

---

[2] The findings and rulings relating to removal were:

"5. That the removal of the children to California would greatly hinder and prevent him [the father] from having the excellent relationship with his children he has with them here in Massachusetts.

"6. That the sisters have an excellent relationship with each other.

"7. That, in the best interest of the children, the request to remove them to California is to be denied."

[3] The judge's additional findings substantiated the relationship of the husband with the children. He found that the husband visited with the children approximately once a week and spoke with them on the telephone at least once a week. He also found that the thirteen year old

All of the findings and rulings concerning removal were directed to the husband's relationship with his children and the relationship between the sisters. The judge made no findings as to the relationship of the mother to the children, nor did he discuss the effect on the children of the advantages or disadvantages of the move except as it affected their relation to their father. There was also no mention of alternative visitation possibilities. From what we can ascertain, the judge recognized the importance of the "'frequent and continuing contact' of the child with both its parents," *Felton* v. *Felton*, 383 Mass. at 234, quoting from Cal. Civ. Code § 4600 (West 1981 Supp.), and entered his judgment prohibiting removal on the basis that the move would make visitation more difficult. We consider that factor not in itself conclusive. The best interests of children for purposes of deciding whether to permit removal are also interwoven with the well being of the custodial parent, and the determination, therefore, requires that the interests of the mother also be taken into account.

The Massachusetts authorities have not discussed in detail the factors to be weighed in deciding questions of removal. The words "upon cause shown" in the controlling statute, G. L. c. 208, § 30, set forth in the margin,[4] have been interpreted to permit removal if in the best interests of the child. *Rubin* v. *Rubin*, 370 Mass. 857 (1976). However, the criteria for determining such best interests have, as yet,

---

daughter has emotional problems and her father "can assist her in trying to overcome these emotional problems as he did with Shelley."

[4] General Laws c. 208, § 30, provides in relevant part:

"A minor child of divorced parents who is a native of or has resided five years within this commonwealth and over whose custody and maintenance the superior court or a probate court has jurisdiction shall not, if of suitable age to signify his consent, be removed out of this commonwealth without such consent, or, if under that age, without the consent of both parents, unless the court upon cause shown otherwise orders."

The statute also applies where separate support is involved. *Gallup* v. *Gallup*, 271 Mass. 252, 257 (1930). *Briggs* v. *Briggs*, 319 Mass. 149, 153 (1946).

not been established, and decisions of the trial court as to whether removal should be allowed have been upheld without much discussion.[5] See, e.g., *Colopy* v. *Colopy*, 348 Mass. 781 (1964) (father permitted "to remove the children [from a religious center where parents had lived] to another State to live near his father, a man of substance"); *Keiter* v. *Keiter*, 357 Mass. 772 (1970) (wife permitted to leave Massachusetts with the child to make a permanent home in New York where she had lived all her life and where her parents and other relatives lived); *Rubin* v. *Rubin*, 370 Mass. at 857 (denial of a petition by the wife to be allowed to move to New York where her ailing mother lived).

More recently, in a case involving another aspect of visitation, the Supreme Judicial Court discussed the meaning of best interests "when the parents are at odds" and "the attainment of that purpose" involves "some limitation of the liberties of one or other of the parents." *Felton* v. *Felton*, 383 Mass. at 233. The court required more consideration by the trial judge of the impact on the child of the father's visits and required demonstration in detail of the harm to the child from conflicting religious instruction. In reversing and remanding for further proceedings, the Supreme Judicial Court pointed out that general conclusions do not suffice and harm cannot be surmised without ground level facts. Because sensitive and significant child-parent relationships are affected by decisions concerning removal, we think that there is here also the need for comprehensive findings and that the interests of the child may be best served by an accommodation "which intrudes least on the

---

[5] It should be noted that where a parent has not sought permission to remove, and has violated a court order prohibiting removal, trial judges have no discretion to order a change in custody solely because of the violation. *Hersey* v. *Hersey*, 271 Mass. 545, 555 (1930). *Heard* v. *Heard*, 323 Mass. 357, 377-378 (1948). *Haas* v. *Puchalski*, 9 Mass. App. Ct. 555, 557 (1980). See also *Masters* v. *Craddock*, 4 Mass. App. Ct. 426, 428-429 (1976).

[liberties] of either parent and is yet compatible with the health of the child." *Id.* at 235.[6]

Other jurisdictions have had occasion to discuss removal more fully.[7] In reaching the conclusion that the well-being of the custodial parent must be considered in determining the best interests of the child, we are much influenced by a case in New Jersey, *D'Onofrio* v. *D'Onofrio*, 144 N.J. Super. 200, aff'd per curiam, 144 N.J. Super. 352 (1976). New Jersey has a statute, almost identical to G. L. c. 208, § 30, which precludes removal in the absence of consent of a noncustodial parent "unless the court, upon cause shown, shall otherwise order." N.J. Stat. Ann. § 9:2-2 (West, 1976). In *D'Onofrio*, the court analyzed the differences between the relationship of a child to a custodial and to a noncustodial parent, saying:

"Even under the best of circumstances and where the custodial parent is supportive of a continuing relationship between the child and the noncustodial parent, the nature of a parental relationship sustainable by way of visitation is necessarily and inevitably of a different character than that which is possible where the parents and children reside together as a single-family unit. The fact remains that ordinarily the day-

[6] Because of these conclusions, we need not consider any constitutional questions raised by the wife. But see *Gallup* v. *Gallup*, 271 Mass. 252, 258 (1930), and *Rubin* v. *Rubin*, 370 Mass. at 858.

[7] There is much variation in the cases, and we have concluded that such variation is more dependent on the factors considered important by the court than on the wording of the relevant statute, if any. Some courts presume that decisions of the custodial parent reasonably made in good faith are made in the best interests of the child. E.g., *Bernick* v. *Bernick*, 31 Colo. App. 485, 487-488 (1972) (move was within State). Others allow the child to accompany the custodial parent whenever the custodian has a legitimate reason consistent with the best interests of the child. E.g., *Jafari* v. *Jafari*, 204 Neb. 622, 624 (1979); *Matter of Ehlen*, 303 N.W.2d 808, 810 (S.D. 1981). Still others require a showing that the move benefits the child (rather than the parent) before the move will be allowed. E.g., *Meier* v. *Meier*, 286 Or. 437, 447-448 (1979); *Fritschler* v. *Fritschler*, 60 Wis. 2d 283, 287-288 (1973).

to-day routine of the children, especially young ones, and the quality of their environment and their general style of life are that which are provided by the custodial parent and which are, indeed, the custodial parent's obligation to provide. The children, after the parents' divorce or separation, belong to a different family unit than they did when the parents lived together. The new family unit consists only of the children and the custodial parent, and what is advantageous to that unit as a whole, to each of its members individually and to the way they relate to each other and function together is obviously in the best interests of the children. It is in the context of what is best for that family unit that the precise nature and terms of visitation and changes in visitation by the noncustodial parent must be considered."

*D'Onofrio,* 144 N.J. Super. at 204-206.

The court also discussed the factors which should be weighed in determining whether removal should be allowed. We agree that these should include:

"the prospective advantages of the move in terms of its likely capacity for improving the general quality of life for both the custodial parent and the children; . . . the integrity of the motives of the custodial parent in seeking the move in order to determine whether the removal is inspired primarily by the desire to defeat or frustrate visitation by the noncustodial parent, and whether the custodial parent is likely to comply with substitute visitation orders . . . which can provide an adequate basis for preserving and fostering the parental relationship with the noncustodial parent if removal is allowed. The court should not insist that the advantages of the move be sacrificed . . . solely to maintain weekly visitation by the father . . . . It is at least arguable, and the literature does not suggest otherwise, that the alternative of uninterrupted visits of a week or more in

duration several times a year [or longer visits during the summer] . . . may well serve the paternal relationship better than the typical weekly visit. . .."

*Id.* at 206-207.

Other jurisdictions, too, have recognized the importance to the children of the welfare of the custodial parent and that visitation patterns can be successfully altered. Illinois has reached this result under a statute which authorizes a court to grant leave to remove "whenever such [removal] is in the best interests of such child." Ill. Rev. Stat. c. 40, § 609 (1977). See, e.g., *In re Custody of Arguilla*, 85 Ill. App. 3d 1090, 1093 (1980) (reversal of trial court because test is not "singly to establish what is in the best interest of child," rather question is also "whether the general quality of life for both the custodial parent and the child will be improved by the removal"); *In re Marriage of Burgham*, 86 Ill. App. 3d 341, 345 (1980) and cases cited (child benefited "by making the custodian a happier better adjusted parent"). See also *Gray* v. *Gray*, 57 Ill. App. 3d 1, 6 (1978); *In re Marriage of Siklossy*, 87 Ill. App. 3d 124, 128-129 (1980). See the following cases reversing a trial judge's prohibition of removal: *Bernick* v. *Bernick*, 31 Colo. App. 485, 487-488 (1972); *Marriage of Lower*, 269 N.W.2d 822, 826 (Iowa 1978); *Nedrow* v. *Nedrow*, 48 Wash. 2d 243, 248, 251 (1956). See also *Pattison* v. *Pattison*, 208 So. 2d 395, 396 (La. 1968); *Jafari* v. *Jafari*, 204 Neb. 622, 624-625 (1979). Cf. Sayre, Awarding Custody of Children, 9 U. Chi. L. Rev. 672, 684 (1942) ("best interest test requires that the interest of others be realized"). But see *Weiss* v. *Weiss*, 52 N.Y.2d 170, 173-176 (1981); *Meier* v. *Meier*, 286 Or. 437, 440-442, 445 (1979); *Fritschler* v. *Fritschler*, 60 Wis. 2d 283, 287-288 (1973).[8]

---

[8] The conclusion reached in *D'Onofrio* and in other cases that the interests of the child are closely interwoven with those of the custodial parent is consistent with psychological studies of children of divorced or separated parents. One researcher has concluded, "Of all factors related to the child's way of coping with loss [of a parent because of divorce or death],

We conclude that while the trial judge considered one important factor, the children's need for weekly visitation by the noncustodial parent, we cannot ascertain whether he also took into account other, perhaps even more important, factors bearing upon their best interests. More particularly, it does not appear that he considered the advantages of the move with respect to the emotional well-being of the family unit as a whole, or the emotional costs of forcing a stressful family and career choice, if such be the case, on the parent having the primary responsibility for the day-to-day care of the children. He did not discuss the possibility of alternate visiting schedules which would preserve and foster the important relationship of the children with their father. He also did not consider whether support payments could be reduced (as offered by the wife) to cover visitation expenses, nor did he inquire if the husband, who had a former career in the Air Force, had access to free or reduced air fares.

Although the children said they preferred to remain in Massachusetts, the preferences of children of these ages must be treated with caution. See *Dumain* v. *Gwynne,* 10 Allen 270, 275 (1865); *Stone* v. *Duffy,* 219 Mass. 178, 182 (1914); *Custody of a Minor,* 383 Mass. 595, 602 (1981); *Moran* v. *Moran,* 200 N.W.2d 263, 269 (N.D. 1972). It is natural for children of nine and thirteen to prefer not to leave their school and friends. *Gray* v. *Gray,* 57 Ill. App. 3d at 6. See also Wallerstein & Kelly, Surviving the Breakup 314-315 (1980), where the authors show the defects of relying on the opinions or preferences of children of these ages.

the role of the home parent seemed most central. Some years after the divorce or death, the well-being of the child appeared closely related to the well-being of the [home] parent." Tessman, Children of Parting Parents 516 (1978). Other investigators have found that there is an increased emotional dependence on the custodial parent after divorce and that children of all ages "were in trouble" when the home parent-child relationship was affected by stress on the home-parent, such as "loneliness and discouragement." Wallerstein & Kelly, Surviving the Breakup 114, 224-225 (1980).

We reverse so much of the judgment as prohibits the wife from removing the minor children to California and remand the case for further proceedings consistent with this opinion. We do not purport to determine the outcome. As more than a year has elapsed since the original hearing and circumstances may have changed in the meantime, such proceedings shall include the hearing of additional evidence if either party or the judge so elects, and shall also include a report of a qualified investigator if the judge should, in his discretion, determine that such a report would be helpful. See G. L. c. 215, § 56A; *Felton* v. *Felton*, 383 Mass. at 242.

*So ordered.*