Meyer, J.
(dissenting). The majority’s conclusion that the Appellate Division did not err as a matter of law and that the Family Court Judge did is not sustainable on the record. Indeed, exactly the opposite is true. Moreover, its conception that the custody of a child can be changed “for the purpose of giving effect to the father’s right of visita *941 tion” without consideration of any of the many other factors involved in the determination of the child’s best interest is so inconsistent with precedent that I cannot join in it. Respectfully, therefore, I dissent.
The majority memorandum makes no reference to the proceeding underlying the Appellate Division order. It was an application by defendant father, made to the Supreme Court which had granted plaintiff wife a divorce by reason of the cruel and inhuman treatment of her by defendant. The relief which it sought was that plaintiff, as custodial parent, be prohibited from removing the three children of the marriage, ages 15, 13 and 9, from the State without defendant’s written consent, the enlargement of defendant’s visitation privileges, and “in the alternative” that if plaintiff wished to reside in France the children shall remain in New York with defendant as custodial parent until plaintiff returns. The affidavit on the basis of which the order to show cause initiating the proceeding was obtained recited the divorce, plaintiff’s remarriage to Joseph Coughlin, the fact that the divorce judgment, a copy of which was annexed, provided that the children were not to be removed from the State without plaintiffs consent, that defendant had learned that plaintiff’s new husband had “applied for transfer, or has been assigned, as the case may be, to France,” that defendant would be irreparably damaged if the children were removed to France, that the reason for the move by plaintiff and her husband to France should be examined as to its necessity and where the best interests of the children weighed in the decision, that if plaintiff and her husband desired to go to France defendant should become the custodial parent until their return and that lesser solutions “are empty.” The affidavit said nothing about defendant’s ability to provide a home and proper supervision for the children if custody was awarded to him.
The judgment of divorce had given custody of the children to plaintiff. Included in the findings on which it was based were that on June 1,1974, defendant left the marital home without informing his wife or making provision for the support of plaintiff and the three children and remained away in Lebanon for some 18 days, that there had been much argument over the religious upbringing of the *942 children, that defendant had threatened to move back to Lebanon and take the children with him notwithstanding plaintiff’s objections and that “plaintiff has provided a good home for the children during the period the parties have lived apart; and, further, the defendant is unable to adequately care for the children while working full time and that there is some basis that the granting of custody to the defendant would result in their being removed to Lebanon on a permanent basis.”
The record contains no answering papers from plaintiff. It shows that on the return day of the order to show cause, the application was transferred from Supreme Court to Family Court, and that when a hearing was held in Family Court one week later defendant’s only witness was James Heenan of IBM, Joseph Coughlin’s employer, who testified concerning the circumstances under which Coughlin was being transferred to France. Defendant was not called as a witness nor did his attorney offer any additional witnesses or evidence other than to suggest that the Judge might want to examine the children, an offer which the Judge declined.
There followed oral arguments by the two attorneys, after which the Judge dictated his decision into the record and directed that the minutes as transcribed be deemed the order. He found that the move to France was only temporary and that it had not been initiated or precipitated by plaintiff and Mr. Coughlin, that there was neither bad faith nor malice on plaintiff’s part, that the defendant’s visitation would be somewhat reduced but that that would be accommodated by providing additional and alternative visitation and reducing support. He, therefore, denied the request to restrain plaintiff from taking the children to France, but reduced defendant’s support payments so as to save him $4,000 per year, increased his summer visitation from two weeks to 30 days, required plaintiff to pay the cost of transporting the children back and forth for that visitation, and gave defendant such additional visitation in France as the parties could agree upon, but not less than one week, to coincide with the Christmas, Easter or spring vacation of the children. The effect, the Judge noted, if defendant took the total time available would be that he *943 would spend more time per year with them than provided for by the divorce decree.
Thus, although the decision made no specific reference to defendant’s alternative request for transfer of custody to defendant, the Family Court Judge denied both branches of defendant’s application. By clear implication, though not in so many words, he found that it was in the best interests of the children that they remain in plaintiff’s custody and that their loss of visitation with defendant during the two-year period the Coughlins were expected to be abroad would be sufficiently compensated by the revised visitation ordered so as not to affect their interest detrimentally. Because the children had been in plaintiff’s custody for some five years after the divorce court found it in their best interest that she have custody, there was no need for evidence or additional findings concerning plaintiff’s ability to care for them properly.
The same cannot be said, however, with respect to defendant, as to whom the divorce court had made an explicit finding that he could not adequately care for the children while he wurked full time. Nevertheless, defendant, who as applicant for a change of custody had the burden of negating the prior finding and proving just how the children would be cared for in his custody, did not even take the stand. Yet despite the absence of any such indication, either in evidentiary or affidavit form, the Appellate Division majority, reversing, “granted temporary custody of the children to the defendant for so long as the plaintiff shall reside outside of New York State.” It did so on the basis of the rule declared by it in Strahl v Strahl (66 AD2d 571, 574, affd 49 NY2d 1036) that visitation between a noncustodial parent and his or her children is so important that the parent may not be deprived of reasonable and meaningful access to the children unless visitation “is inimical to the welfare of the children or the parent has in some manner forfeited his or her right to such access.” It recognized that a custodial parent has a right to remarry, which may require a change of locale, but noted that there is an obligation to protect the relationship of the children with the noncustodial parent which may require sacrifices by the custodial parent. The rule governing such cases was, *944 therefore, the “reasonable accommodations of the rights and needs of all concerned, with appropriate consideration given to the good faith of the parties in respecting each other’s parental rights.” (82 AD2d, at p 195.)
Against that rule, the majority at the Appellate Division analyzed the facts and concluded on balance that the Family Court order unjustifiably and unreasonably interfered with defendant’s right to meaningful visitation and was contrary to the children’s best interests. The reasons given were that it would separate a loving and devoted father from his children for two consecutive periods of one year each, it being speculative to suggest that defendant would be able to visit the children in France, that although the number of visitation days per year is an important consideration, the frequency and regularity of visitation was far more significant, that it was misleading to speak of the move as temporary because there was no guarantee that at the end of the two-year period the children would return to the area in which defendant lives and works, that the Coughlins were not compelled to move to France, he having accepted the position without increase in pay or other career benefit than that it would enrich his dossier, and that plaintiff had not married Coughlin until after he accepted the position in France, and had concealed the move from defendant. That decision made as the Appellate Division order states “on the law” is (1) erroneous as a matter of law because made in the face of the divorce court’s finding that defendant was not a proper custodian and without any evidence that there had been any change in his situation, and (2) an abuse of discretion as a matter of law because custody should not be changed to punish one parent or enforce the rights of the other but only when it has been shown to be in the child’s best interest to do so.
The impropriety of awarding custody to defendant was pointed , out by the dissenting Justices at the Appellate Division, who after noting the divorce court’s finding that defendant could not adequately care for the children, protested that “Custody is now being transferred by this court upon a record that does not adequately explore the crucial issue of the father’s present ability to maintain the care and custody of the children.” (82 AD2d, at p 197.) On *945 exactly such a basis both the Appellate Division, Fourth Department, in People ex rel. Yaklin v Yaklin (19 AD2d 405), and the Appellate Division, First Department, in People ex rel. London v London (9 AD2d 663), have remanded to the Supreme Court for a further hearing. In Yaklin, a separation agreement gave custody to the father. One year later the mother sought in a habeas corpus proceeding to have custody changed but the habeas court awarded custody to the father. The mother some three years after the first proceeding again sought to have the order amended to grant her custody, noting that the father had moved to Michigan and taken the children with him, which prevented her from having visitation. Solely on the basis of the move to Michigan the amendment requested was granted. Pointing out that there was no testimony concerning the conduct and morals of the parties since the first habeas order was made, the Appellate Division remanded so that proof could be “taken as to the fitness of the mother as of the date that the court awarded her custody and so that the lower court could order an investigation by the probation department or a social agency in the family field.” The more is that ruling applicable to the present case, which not only contains no findings and no evidentiary basis for findings on defendant’s fitness and capability, but also contains neither findings nor basis therefor with respect to the effect on the children of being separated from their mother with whom they have lived all their lives.
Nor is the Yaklin-London concept confined to the First and Fourth Departments, for the Second Department has itself, at least inferentially, recognized the need for a full hearing as to all factors by emphasizing in Munford v Shaw (84 AD2d 810) that such a hearing, including the expert testimony of a psychologist, supported the custody order made in that case.[1] Moreover, the holding of such a *946 hearing is mandated by subdivision 1 of section 240 of the Domestic Relations Law which provides that in any proceeding related to custody “the court must give * * * direction, between the parties, for the custody * * * of any child of the parties” based upon “the circumstances of the case and of the respective parties and * * * the best interests of the child” and that there is “no prima facie right to * * * custody * * * in either parent” (emphasis supplied). Clear from a reading of the section, moreover, is the fact that it applies both to an original award of custody and to the modification of such an award. Moreover, as is stated in both decisional and statutory law, stability is a factor of overweening importance in the development of a child (Matter of Nehra v Uhlar, 43 NY2d 242, 250; Obey v Degling, 37 NY2d 768, 770; Matter of Lang v Lang, 9 AD2d 401, 409, affd 7 NY2d 1029; Matter of Norman, 26 Misc 2d 700, 704; Domestic Relations Law, § 75-b, subd 1, par [d]).
A related but separate reason why we should reverse and remit is that in ordering a change in custody “for the purpose of giving effect to the father’s right of visitation” without consideration of the many other factors involved in the determination of the best interests of the children[2] the Appellate Division abused its discretion as a matter of law. Its repeated reference (82 AD2d, at pp 192,196) to the fact that when plaintiff and Joseph Coughlin married, Coughlin had already accepted the position in France and that *947 she had not by the date of defendant’s application informed defendant directly of the impending move strongly suggests that it was more concerned with punishing plaintiff than it was in being guided strictly by what under all the circumstances was in the best interests of the children (Brooks v Brooks, 20 Ore App 43, pet for review den id.).[3] In Brooks the mother had been awarded custody in a prior Montana divorce decree but after she moved to Oregon with the children the Montana court modified its decree to award custody to the husband. The Oregon court held the Montana modification order subject to further modification in Oregon because (20 Ore App, at p 50) “from our examination of the record it appears that this order was made without any evidence as to the circumstances of the children, and solely on the basis of the nonresident father’s allegations of interference by the mother with his legal rights of visitation and periodic custody. Under these circumstances we conclude that the order was punitive, viz., to discipline the mother for alleged interference with the father’s visitation rights, and was therefore subject to appropriate judicial inquiry and possible modification by another court in the state in which the children were physically present.”
The strong policy of New York not to permit custody awards to be made for a punitive" purpose is evident from both decisional and statutory law. Because, as was forcefully stated in Matter of Bachman v Mejias (1 NY2d 575, 582), “A child is not a chattel”, we have declined to accord full faith and credit or res judicata effect to a foreign State proceeding when the best interests of the child dictated otherwise {id.; Matter of Berlin v Berlin, 21 NY2d 371, 377, cert den 393 US 840). Likewise, we have ignored both rules of comity as to foreign country decrees and irrespon *948 sible and contemptuous conduct toward the court on the part of the parent to whom custody is awarded, when the child’s best interests were that custody be with that parent (Matter of Lang v Lang, 9 AD2d 401, 409-410, affd 7 NY2d 1029, supra). The weight of out-of-State authority is in accord (Bodenheimer, Progress Under the Uniform Child Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications, 65 Cal L Rev 978, 982, 1006). Moreover, in Cmaylo v Cmaylo (76 AD2d 898, 899) where Special Term in refusing to permit plaintiff mother to take the children to Texas after her remarriage gave great weight to the fact that plaintiff knew before her second marriage of her future husband’s prospective move, the Appellate Division, Second Department, reversing, noted “that this is not a determinative factor, and should not be used to punish plaintiff or the children.”[4]
Professor Bodenheimer suggests that a punitive custody change may violate the custodial parent’s constitutional right to travel (op. cit., at p 1008; see, also, D’Onofrio v D’Onofrio, 144 NJ Super 200, 208, n 1, affd 144 NJ Super 352). One need not go so far, however, for the clear implication of the Uniform Child Custody Jurisdiction Act (Domestic Relations Law, §§ 75-a — 75-z) is that while improper removal of a child from the custody of the custodial parent may be considered in deciding whether to modify a foreign State custody decree, a change may nevertheless be ordered if “required in the interest of the child” (Domestic Relations Law, § 75-i, subd 2).[5] A fortiori, therefore, in the situation of the present case, the children having lived with plaintiff all their lives and been in her sole custody for the last five years, the act does not permit change of the custody of the Daghir children without plenary considera *949 tion of their best interests. The Appellate Division order is, for this additional reason, erroneous as a matter of law.
More distressing than the failure of the majority to recognize and correct by remitting for further hearing the errors of law which infect the Appellate Division order is the jurisprudential result of its conclusion. For whatever reason the issue before us in this case has in recent years been litigated with increasing frequency. Thus, in the last five months we have had before us not only the instant case but Priebe v Priebe (55 NY2d 997, supra) and in the two preceding years have decided Weiss v Weiss (52 NY2d 170) and Strahl v Strahl (49 NY2d 1036, supra). Yet in none of those cases except Weiss, which dealt with but one small phase of the problem but made clear in so doing that it is the physical and emotional well-being of the child as well as the “rights” of the parent that are determinative, has anything been written by us that gives guidance to the courts below. The need for guidelines is, however, apparent from the varying decisions, many acknowledging the difficult choices involved, in the lower courts (Martinez v Konczewski, 85 AD2d 717, cross app dsmd 56 NY2d 592; Munford v Shaw, 84 AD2d 810, supra; Dean v Dean, 79 AD2d 876, mot for lv to app den 52 NY2d 706; Cmaylo v Cmaylo, 76 AD2d 898, supra; Todaro v Todaro, 76 AD2d 816; Becker v Becker, 75 AD2d 814; Sipos v Sipos, 73 AD2d 1055; Matter of Burkart v Montemarano, 72 AD2d 561; Rusin v Rusin, 103 Misc 2d 534; Matter of O’Shea v Brennan, 88 Misc 2d 233; Kovesdy v Hines, 75 Misc 2d 644; Archibald v Archibald, NYLJ, March 10,1981, p 12, col 5; see Bazant v Bazant, 80 AD2d 310).
It is, of course, beyond the proper scope of a dissenting opinion to attempt to set forth guidelines. It does not appear amiss, however, to point out that guidelines have been suggested in out-of-State decisions (e.g., D’Onofrio v D’Onofrio, 144 NJ Super 200, affd 144 NJ Super 352, supra), and that in substantial respects New York cases appear to deviate from the majority view (see Ann., 15 ALR2d 432; 154 ALR 552). In particular, as concerns the facts of this case, courts in other States are much more willing to accept an increase in visitation and reduction in *950 support payments as a means of working out the problem, and are much less prone than was the majority below to adopt pejorative inferences (see, e.g.,D’Onofrio v d’Onofrio, supra; Hale v Hale, 429 NE2d 340, 345 [Mass], supra; Matter of Lower, 269 NW2d 822, 826 [Iowa]; Matter of Ehlen, 303 NW2d 808 [SD]).
There should be a reversal.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Wachtler concur; Judge Meyer dissents and votes to reverse in an opinion in which Judge Fuchsberg concurs.
Order affirmed, with costs, in a memorandum.

. Nothing in Priebe v Prie.be (55 NY2d 997) contradicts that concept for the Appellate Division decision in that case was based upon a record after full hearing (see 81 AD2d 746). The need for a hearing on all factors is also recognized in out-of-State cases, for example, Hale v Hale (429 NE2d 340, 345 [Mass]), in which the Supreme Judicial Court of Massachusetts reversed and remanded for further proceedings because “while the trial judge considered one important factor, the children’s need for weekly visitation by the noncustodial parent, we cannot ascertain whether he also took into *946 account other, perhaps even more important, factors bearing upon their best interests.” (Generally, see 1 Lindey, Separation Agreements and Ante-Nuptial Contracts [rev ed], § 14 [7] [A], p 14-84; and Ann., 15 ALR2d 432; 154 ALR 552.)

. We have in Matter of Nehra v Uhlar (43 NY2d 242) and more recently in Friederwitzer v Friederwitzer (55 NY2d 89) and Esehbach v Eschbaeh (56 NY2d 167) reviewed many of those factors. A concise and complete list of factors is set forth in Devine v Devine (398 So 2d 686, 696-697 [Ala]), in which the Supreme Court of Alabama noted the importance of the sex and age of the child as factors to be considered, and directed the Trial Judge to “go beyond these to consider the characteristics and needs of each child, including their emotional, social, moral, material and educational needs; the respective home environments offered by the parties; the characteristics of those seeking custody, including age, character, stability, mental and physical health; the capacity and interest of each parent to provide for the emotional, social, moral, material and educational needs of the children; the interpersonal relationship between each child and each parent; the interpersonal relationship between the children; the effect on the child of disrupting or continuing an existing custodial status; the preference of each child, if the child is of sufficient age and maturity; the report and recommendation of any expert witnesses or other independent investigator; available alternatives; and any other relevant matter the evidence may disclose.”

. Not without significance in assessing the punitive nature of the Appellate Division order is the fact that its order grants “temporary custody of the children to the defendant for so long as the plaintiff shall reside outside of New York State.” Whether it would be in the best interests of the children to return to plaintiff’s custody after living with defendant for two years certainly cannot be foretold at the beginning of the two-year period. Temporary custody should be awarded only pending a full hearing on the best interests of the child. When that has been determined the award made should be permanent, though of course subject to possible later modification on a proper showing. For the Appellate Division to have ordered a “temporary custody” change of possible two-year duration (or, according to its view, even longer) makes evident that it was not acting with the best interests of the children in perspective.

. That the second husband in Cmaylo worked for American Airlines and, therefore, could obtain free air transportation between New York and Texas for the children does not distinguish the instant case in view of the Family Court’s reduction of $4,000 in the support payments Mr. Daghir was required to make under the divorce decree and the further requirement that Mrs. Daghir pay transportation costs for the three children from France to New York and back for the summer visitation period.

. Section 75-b (subd 1, par [e]) of the Domestic Relations Law states that one purpose of the act is to “deter abductions and other unilateral removals of children undertaken to obtain custody awards.” Subdivision 1 of section 75-i permits a court in making an original award to consider, if just and proper under the circumstances, that petitioner has wrongfully taken the child from another State. With respect to a change of a prior custody award, however, subdivision 2 of section 75-i recognizes, by the words quoted in the text above, that change may not be in the best interests of the child.