KATHY NANCE DELMOLINO vs. JAMES S. NANCE.

Norfolk. March 12, 1982. — July 21, 1982.

Present: GRANT, GREANEY, & SMITH, JJ.

*Divorce and Separation*, Custody of child, Modification of judgment.

Failure by a mother who had been granted custody of her child by a divorce judgment to seek court permission before removing the child from the Commonwealth did not, in the circumstances, give a probate judge discretion to order a change in custody in the father's petition for modification. [211-214]

COMPLAINT for divorce filed in the Probate Court for the county of Norfolk on September 1, 1976.

Complaints for modification were heard by *Fitzsimmons*, J.

*Marcus E. Cohn* (*Andrew R. Grainger* with him) for the plaintiff.

*Jeffrey C. LaPointe* for the defendant.

SMITH, J. On March 15, 1977, Kathy Nance (mother) was granted a divorce from James S. Nance (father) and legal and physical custody of their minor child, Nicole, then age seven, was given to the mother. The father was given visitation rights and was required to pay child support. In 1978, the father married his present wife and in 1980, the mother married her present husband, William Delmolino.

Since the time of the divorce, bitterness and animosity have characterized the relationship between the parties. The mother filed several complaints for contempt alleging that the father had failed to pay child support. The father, in turn, on February 12, 1979, filed a complaint for modification which requested permanent custody of Nicole. This complaint was not marked up for a hearing until certain events took place in 1980.

In August, 1980, Delmolino received a promotion which required the family to move to Ohio. Upon hearing of the

imminent departure of Nicole to Ohio, the father obtained an order that temporarily granted him custody of Nicole for a two-week period.[1] Unable to locate Nicole in Massachusetts, the father went to Ohio, removed Nicole from a school bus, brought her back to Massachusetts, and obtained temporary custody pending the hearing on his complaint for modification. Prior to removing Nicole from the Commonwealth, the mother did not seek the consent of the judge. See G. L. c. 208, § 30.

A hearing was held before a Probate Court judge on the father's complaint for modification in which he requested permanent custody of Nicole and on the mother's complaint for modification in which she requested permission to remove Nicole from the Commonwealth.[2] After the hearing, the judge modified the original judgment and ruled that "[l]egal and physical custody of Nicole shall be joint and equal in both parents." Despite ruling that physical custody of Nicole shall be "equal in both parents," the judge ruled that "Nicole shall reside with [the father] during the school year . . . and . . . with [the mother] during the Thanksgiving, Christmas, February, Easter and summer school recesses."[3] The judge took no action on the mother's request for permission to take Nicole to live with her in Ohio. The mother has appealed and claims, among other things, that the judge erred in ordering a change in custody without first finding that a relevant change in circumstances had occurred since the entry of the judgment that awarded sole custody to her. We have before us a complete transcript of the evidence and the judge's memorandum in support of his decision.

---

[1] The order was entered under the February 12, 1979, complaint for modification filed by the father.

[2] This complaint was filed shortly before the hearing.

[3] The judge, in essence, gave the father physical custody of Nicole and granted the mother visitation rights. In the original judgment of divorce, the mother had sole physical custody and the father was allowed visitation rights on two weekends a month and two weeks in the summer.

The law in this type of case is simple and easy to grasp, although, at times, difficult of application. For decades, it has been the law that the original judgment awarding custody to a parent is presumed to have been correct, see *Hersey* v. *Hersey*, 271 Mass. 545, 554 (1930); *Fuller* v. *Fuller*, 2 Mass. App. Ct. 372, 376 (1974); *Haas* v. *Puchalski*, 9 Mass. 555, 557 (1980), and that before a judge can order a transfer of custody from one parent to another, he must affirmatively find that there is a relevant change in circumstances. See *Hinds* v. *Hinds*, 329 Mass. 190, 191 (1952); *Haas* v. *Puchalski, supra* at 557. In addition, "that change must be of sufficient magnitude to satisfy the governing principle by which the court must be guided in these cases, namely, whether the transfer of custody will be conducive to the welfare of the [child]." *Fuller* v. *Fuller, supra* at 376. The original judgment here had given the mother sole custody of Nicole. The judge's ruling stripped sole custody of the child from the mother and ordered that custody be shared by the father and mother. In addition, the judge gave the father physical custody of the child for the entire year, with the mother limited to physical custody during school recesses. Obviously, the move to Ohio was a change in circumstances, but there is nothing in this record or in the judge's memorandum that dictates that the best interests of the child require a transfer in custody.

The memorandum is replete with praise for the mother and stepfather. The judge found that the mother "is a fine parent" who "loves Nicole very much, and is deeply interested in Nicole's future." The mother is praised for teaching Nicole "good personal values" and for being at all times "deeply interested in Nicole's academic progress." The judge was also unstinting in his praise for Nicole's stepfather, William Delmolino.[4] There is nothing in the record or in the judge's memorandum to indicate that the mother has been an inadequate parent in any respect, or that her second marriage has been detrimental to Nicole. *Id.* at 377.

---

[4] The judge also praised the father and his wife.

It is apparent from an examination of the judge's memo-
randum that he relied, to a great extent, on the report of a
guardian ad litem, appointed under G. L. c. 215, § 56A.[5]
The appointment directed the guardian ad litem to report
the facts and to make a "custodial recommendation." There
is nothing in G. L. c. 215, § 56A, that specifically author-
izes a Probate Court judge to request a guardian ad litem to
make a custodial recommendation.   On the other hand,
there is no prohibition against it, provided the judge draws
his own conclusions and understands that "the responsibili-
ty of deciding the case [is] his and not that of the guardian."
*Jones* v. *Jones*, 349 Mass. 259, 265 (1965).  The guardian, in
his report, under the heading of "Conclusion and Recom-
mendations," of which the material parts are outlined in the
margin,[6] stated that "[i]t is difficult to see how another

---

[5] General Laws c. 215, § 56A, provides, among other things, that a Pro-
bate Court judge may appoint a guardian ad litem to investigate the facts
in any proceeding pending in the Probate Court relating to or involving
questions as to the care and custody of minor children.  Once the investi-
gation of the facts is completed, the guardian ad litem is required to re-
port the results of his investigation, in writing.  The report is open to
inspection by the parties or their attorneys.  *Jenkins* v. *Jenkins*, 304 Mass.
248, 252-253 (1939).

[6] "*Conclusion and Recommendations.*  This is a truly difficult matter
for the court to decide; however, even with the difficulty it is fortunate
that both parents are extremely well fit, able to care for Nicole and pro-
vide a good home for her.  However, inasmuch as the parties are divorced
and do live apart, and given the significant geographical difference which
now separates them, the idea of split or shared physical custody is a virtu-
al impossible one under the instant circumstances."

"It is the opinion of this investigator that the prior problems that existed
between the parties concerning inconsistencies in meeting support obliga-
tions (which arrearages have now been brought up to date) as well as
problems surrounding visitations, should not be given much weight con-
sidering the paramount issue here, namely with which parent as the princi-
pal custodian can the best interests and welfare of the child be best served."

"The investigator takes due note of the fact that the child was enrolled
in late October in the Needham school system where she apparently is
doing well. Prior to that she had spent less than two months in the Mason,
Ohio school system.  It is difficult to see how another change would be in
her interest, particularly since she seems to have adjusted well in the Nance
home.  Therefore, it is recommended that joint legal custody of the child
be awarded to the parties; hopefully this will encourage communication

change [in schools] would be in her [Nicole's] interest, particularly since she seems to have adjusted well in the Nance home," and then made the custodial recommendation that the judge adopted, with one minor exception. In making that recommendation, it is plain that the guardian ad litem did not take into consideration the law that is applicable to a change of custody matter.[7]

In addition to reliance on the guardian ad litem's recommendation, the judge in his memorandum gave two reasons for his decision to change custody. He stated that "[two teachers of Nicole] feel that the child's continued involvement in the Needham schools is in her best interests." The judge, as quoted in the margin,[8] also stated that he was impressed by Nicole's unique bond of friendship and happiness which she shares with her classmates and teachers at the

---

between the parties on matters of substantial interest concerning the child and afford them the opportunity to demonstrate their love and concern of the child in this manner. Physical custody should be awarded to the plaintiff; however, the defendant should have the child with her for Christmas school vacation, as well as the school's spring and summer vacations. The child should remain with the father in Needham during the school winter vacation. The cost attendant to the child's travel between Massachusetts and Ohio and consideration of support payments for the child should be reviewed by this court at the time of the hearing. Although the investigator did not review or analyze to any depth the relative financial positions of the parties, it is my view that both parents should have some responsibility for the financial support and needs of the child."

[7] The guardian ad litem puts the paramount issue in the case as "namely with which parent as the principal custodian can the best interests and welfare of the child be best served." Actually, the Probate Court had decided that issue in its original judgment in giving the mother sole custody. This case is concerned with whether there has been a relevant change in circumstances.

[8] "In addition, the court is very impressed by Nicole's unique bond of friendship and happiness which she shares with her classmates and teachers at the Hillside School in Needham. To be sure, the child has prospered academically, and has been happy and well-adjusted at each school she has attended, but her unusual rapport and kinship with her fellow students and teachers in the Needham schools appears to the court to be of much benefit and security to the child, and this bond should not be overlooked as a prominent academic, social, and stabilizing factor in the continued success of a bright and wonderful child."

Hillside School in Needham. It should be noted that in the very next sentence the judge stated, "[t]o be sure, the child has prospered academically, and has been happy and well-adjusted at each school she has attended." Of course, the judge's comment includes the school in Mason, Ohio, that the child was attending before she was whisked off a school bus by her father and brought back to Massachusetts.

In sum, there is nothing in the record that shows any relevant change in circumstances that would justify the transfer of custody ordered in this case.[9] The fact that the mother did not seek permission to remove the child from the Commonwealth does not give the judge discretion to order a change in custody solely because of the failure to obtain consent. *Hale* v. *Hale*, 12 Mass. App. Ct. 812, 816 n.5 (1981).

The judgment is vacated. If the mother's present plans are to reside outside the Commonwealth with the child, a hearing must be held in regard to her complaint for modification in which she requested permission to remove the child from the Commonwealth. At the hearing the judge must consider the factors outlined in *Hale* v. *Hale*, at 815-819, in making the decision on the complaint.

*So ordered.*

---

[9] According to the judge's memorandum, his rulings were "based upon all of the evidence, including an interview with Nicole," The guardian also interviewed Nicole. Nicole was eleven at the time of the interviews, and it has been noted by the courts that "the preferences of children of these ages must be treated with caution." *Hale* v. *Hale*, 12 Mass. App. Ct. 812, 820 (1981). See Wallerstein & Kelly, Surviving the Breakup 314-315 (1980).