## JEANNE M. ARDIZONI *vs.* DANA M. RAYMOND.

No. 95-P-1314.

Suffolk. May 7, 1996. - July 18, 1996.

Present: SMITH, PORADA, & IRELAND, JJ.

*Divorce and Separation,* Child custody, Modification of judgment. *Parent and Child,* Custody. *Minor,* Custody.

In a proceeding to modify a judgment of divorce with respect to physical custody of the minor children, identical eleven year old female twins, the judge's finding that a material and substantial change in circumstances had occurred was supported by the record and was not clearly erroneous; however, the judge failed to make specific or detailed findings based on evidence in the record, apart from the children's own statements of preference, to support his conclusion that one twin should be placed in the custody of the father and the other in the custody of the mother: the matter was remanded for further hearing and findings with respect to each child's best interests. [737-741]

COMPLAINT for divorce filed in the Plymouth Division of the Probate and Family Court Department on April 20, 1993.

A complaint for modification, filed on April 19, 1994, was heard by *James R. Lawton,* J.

*James Michael Merberg* for the defendant.

*Brian D. Bixby* for the plaintiff.

IRELAND, J. Jeanne M. Ardizoni (wife) and Dana M. Raymond (husband) were married in 1984, and, in the same year, became the parents of identical twin girls, Rebecca and Mary (pseudonyms). They separated in March, 1993, because of serious problems in the marriage, and the husband filed a complaint for divorce in April of that year. In February, 1994, a judgment of divorce entered under G. L. c. 208, § 1B, but, two months later, the wife filed a complaint with the Probate & Family Court to modify the physical custody provisions of that judgment. The husband has appealed from the resulting order. The single issue presented is whether it was

error for the judge to separate the parties' identical eleven year old female twins and to award each parent physical custody of one child. From the record before us, we conclude that it was. We vacate the order and remand the matter for further proceedings on the issue of physical custody.

*Factual background.* In April, 1993, the Department of Social Services (DSS) became involved in the custody issue because of concerns it had over the mother's fitness to care for the twins. The concerns were prompted in large part by the mother's history of drug abuse. As a result, the father was given temporary physical custody of the children. By order dated August 11, 1993, the probate judge who would later hear the divorce complaint decided that the father should retain physical custody of the children and that the mother's visits with them would be supervised.[1]

The judgment of divorce incorporated and merged the parties' separation agreement, including their stipulation to joint legal custody of the children, with physical custody remaining with the father for the ensuing three months, subject to the mother's visitation rights. The stipulation also provided that joint physical custody would be transferred to *both* parents without requiring a petition for modification, so long as the mother's visitation with the twins "has gone well."

In April, 1994, the mother filed a complaint for modification of the decree, seeking sole physical custody of the children. Her complaint alleged a material change in circumstances: the twins had been placed "in physical and emotional danger in their father's home due to the presence of their father's oldest child [by a previous marriage], a son . . . who has recently been arrested for use of a firearm and committed to a mental hospital." In December, 1994, the parties stipulated that, commencing in January, 1995, each parent would have physical custody of both children for alternating two-week periods and that, when the twins were staying with the father, his oldest son would not be left alone with them. The stipulation was to govern only while the complaint for modification was pending. On February 14, 1995, the date scheduled for a full hearing on the mother's complaint for modification, the judge (with the apparent blessing of both parties' counsel) interviewed the girls in his chambers outside

---

[1]The record is unclear as to the further involvement of DSS.

the presence of counsel and discussed with them their particular preferences about which parent they might wish to live with. Thereafter, the judge brought the twins into the courtroom for an informal hearing on the record, during which Rebecca said, "I want to try it [living] with my mother!"

Based primarily upon Rebecca's stated wish to live with her mother on a temporary experimental basis, and upon Mary's stated wish to remain with her father, as well as the mother's successful efforts at rehabilitation, the judge issued a temporary order placing Rebecca with the mother. As before, Mary continued to live with the father. In issuing the order, the judge emphasized that the girls would continue to attend the same school, at least through June, 1995, and that they would be together during visits with each parent. The matter was continued for a further hearing four months hence. A guardian ad litem (G.A.L.) was appointed to investigate the matter and to report back to the court.

A three-day trial on the wife's complaint for modification took place June 13, 1995, through June 16, 1995, during which the judge heard detailed testimony from the G.A.L., Dr. Vickie Lyall, focusing in particular upon a 29-page report that she had submitted to the court. The judge also heard testimony from the twins' school guidance counselor,[2] from Mary's therapist,[3] from the mother's clinical social worker, from the parties themselves, and from others.[4] Several days after the trial, the judge spoke with Rebecca in the privacy of his chambers concerning her thoughts about her situation and her preferences as to where she should live.

On June 28, 1995, the judge issued written findings and rulings together with a transcript of the informal hearing that had taken place February 14, 1995. On October 10, 1995, he issued supplementary findings. In an order captioned, "Temporary Orders as Modified," the judge continued the children's separate living arrangements for an additional year by awarding physical custody of one twin to each parent.

---

[2]The guidance counselor is a licensed social worker who holds a masters' degree in psychology and a certificate of advanced graduate study (CAGS) in counseling. She is a former Superior Court probation officer.

[3]The therapist holds a license as an independent clinical social worker and a master's degree in social work.

[4]A school nurse, the wife's mother, and the husband's father.

Thereafter, a single justice of this court, acting upon the father's petition for interlocutory relief, entered an order noting that, despite its caption, the "temporary" orders amounted to a final order in the wife's complaint for modification of custody. The single justice certified the matter for argument before a full panel. In addition to the usual record from the proceedings below, the Probate Court has also forwarded to us a sealed and impounded copy — unseen by counsel — of the judge's notes from his June 19, 1995, interview with Rebecca.

At oral argument on May 7, 1996, the parties reported to us that Rebecca continues to reside with her mother, while Mary continues to live with her father. Reportedly, the twins are doing satisfactorily in their respective placements. The twins are enrolled in the same school system, but since September, 1995, have attended different elementary schools. They visit on alternate weekends with each parent. Thus far, however, Mary has refused to remain overnight at her mother's home during her visits there.

*Discussion.* The father claims that the judge's order is clearly erroneous and not supported by evidence and that the overwhelming evidence was in favor of maintaining the twins under one roof. He contends that the judge placed too much emphasis upon the children's preferences as stated to him during his private discussions with them. Given Mary's purported refusal to live with the mother, the father argues that the only practical way of keeping the twins together is for the court to give him physical custody of both children.

General Laws c. 208, § 28, as amended through St. 1993, c. 460, enables a Probate Court judge, upon finding that "a material and substantial change in the circumstances of the parties has occurred" to modify an earlier divorce judgment concerning the custody arrangements of minor children, where the modification "is necessary in the best interests of the children." See *Hartog* v. *Hartog*, 27 Mass. App. Ct. 124, 128 (1989), and cases cited. "In determining whether there has been a material change in the parties' circumstances, the probate judge must weigh the relevant circumstances; the resolution of the various factors rests within the judge's sound discretion. . . . Unless there is no basis in the record for the judge's decision, we defer to the judge's evaluation of the evidence presented at trial." *Bush* v. *Bush*, 402 Mass. 406, 411 (1988).

In allowing the wife's complaint for modification, the judge cited as a material and substantial change in circumstances, the wife's "great success in overcoming her alcohol and drug dependence." Although not the same change in circumstances that the wife had originally alleged in her complaint, see *supra* at 735, the wife's progress in this regard, since the divorce decree granting temporary physical custody of the twins to the father, was supported by evidence in the record. Hence, the finding that a material and substantial change in circumstances had occurred was not clearly erroneous.

When determining child custody awards in general, or modifications of custody awards based on changed circumstances, the guiding principle always has been the best interests of the children. *Rolde* v. *Rolde,* 12 Mass. App. Ct. 398, 404 (1981). "The decision of which parent will promote a child's best interests 'is a subject peculiarly within the discretion of the judge.' " *Bak* v. *Bak,* 24 Mass. App. Ct. 608, 616 (1987), quoting from *Jenkins* v. *Jenkins,* 304 Mass. 248, 250 (1939). Discretion allows the judge, when determining the best interests of children, to consider the widest range of permissible evidence, including the reports and testimony of a court appointed investigator or G.A.L., evidence of the history of the relationship between the child and each parent, evidence of each parent's present home environment and overall fitness to further the child's best interests, and the judge's own impressions upon interviewing the child privately in chambers. See Kindregan & Inker, Family Law and Practice § 1169 (1990) & cases cited.

The list of factors within the judge's purview in child custody matters includes a presumption generally favoring the placement of siblings under one roof. Kindregan & Inker, *supra* at § 1171, citing *Bezio* v. *Patenaude,* 381 Mass. 563, 571-572 (1980). The list also allows the judge to consider the expressions of a preference by a child in a custody dispute. Kindregan & Inker, *supra* at § 1170, citing *Hale* v. *Hale,* 12 Mass. App. Ct. 812, 820 (1981). Statements of a particular preference, however, "must be treated with caution," *Hale* v. *Hale, supra* at 820, particularly where, as here, custody is hotly disputed. Kindregan & Inker § 1171, at 271 & n.54. Although one of the many permissible factors to be considered, the preference of a younger child "is not given decisive weight." *Bak* v. *Bak, supra* at 617. See also *Custody of*

*Vaughn,* 422 Mass. 590, 599 n.11 (1996) ("[P]reference of an eleven-year-old is not given decisive weight, although it is a factor to be considered").

We have examined both the record from the proceedings below and the judge's notes from his private interview with Rebecca and find no evidence from which the judge properly could have concluded that a split physical custody arrangement would be in the childrens' best interests. Indeed, the evidence — including the opinions and recommendations of various witnesses (expert and nonexpert alike) plus the twins' own reported statements about being separated from each other — is to the contrary.

For example, the G.A.L. observed in her report:

> "The imposed separation of the twins has been detrimental to both girls and regardless of which parent receives custody, they should be reunited. Given the intense parental battles and violent incidents, the girls' already intense bonding, as a result of being identical twins, was fortified. They looked out for each other. . . . The disadvantage of the current split custody arrangement has been the disruption of that essential unit. . . ."

The G.A.L. reiterated that point during her testimony.

> "[G]enerally all siblings are kept together . . . given a divorce situation. The siblings themselves become a unit that moves from one house to the other. . . . They sort of cushion the blows that might happen as a result of parental hostilities. In this particular case I think the nature and the intensity of the battle between the parents has intensified that bond, so that this is really a protective unit, [Mary and Rebecca], but also the fact that they're identical twins makes that bond even tighter. . . . [T]hey not only experienced things together, they looked out for each other. . . ."

The children's school guidance counselor was not specifically qualified by the judge to give an expert opinion but, nevertheless, was encouraged by him, based on her professional experiences dealing with them, to offer a lay opinion on the subject. She stated, "The one thing that always stuck out in

my mind was that [Mary] and [Rebecca] had each other. When mom and dad had difficulties . . . they had each other." The guidance counselor opined that the children should be reunited "because that's what they had before. . . . [W]hat they have expressed to me is [t]hat they would like that."

During her sessions with a therapist, Mary continually expressed the desire to be reunited with her sister. According to the therapist, Mary "was disturbed by the separation . . . [and] wanted her sister to be with her. . . ." The judge's interview with Rebecca supports the same conclusion that each twin wanted to be reunited with her counterpart, although Rebecca wished for this to occur under the mother's roof.

The twins have not made the task of keeping them together (or reuniting them at some point during the pendency of this matter) any easier: Rebecca has consistently voiced a firm desire to live with the mother and the mother's current fiancé; while Mary has been even more emphatic in her desire *not* to live with the mother and the fiancé.[5] The judge wrote that his temporary order splitting the twins was "based upon what this court finds are the personal preferences of the children and what, under all of the circumstances, appears to be in the best interest of the children." The judge wrote further on October 10, 1995, that Rebecca

> "has demonstrated a firm resolve not to return to her father's permanent custody and her very eloquent and intelligent statement reflects that view. It is on the basis of the statement of this very fine, intelligent and nice young woman that I am only entering an additional Temporary Order of custody in the matter. . . ."

The judge entered no finding declaring either parent unfit. Beyond that, he seemed to lean in favor of the mother. He concluded that she "has achieved great success in overcoming her alcohol and drug dependence," that he "could not help but be impressed with the manner in which [she] has turned her life around," and that "in view of the wretched life she has led, [she] is someone we can now respect and trust." By

---

[5]The judge noted that Mary "expressed her disgust for and fear of [the mother's fiancé]."

contrast, the judge upbraided the father for his continued dependence upon public assistance. According to the judge, the father "for years [has] refused to seek gainful employment which would have provided for the economic needs of his family and to have set a worthy example for his children." The judge also concluded that the father had thwarted and interfered with the children's right to visit with the mother on a consistent basis, and that Rebecca "continues to seek the protection and stability of her mother's home and refuses to return to the noise and chaos of her father's home." The judge emphasized his over-all belief, based upon his dealings with the parents and both children, that "the sad and traumatic lives they have lived is not the story of a normal and typical American family experiencing the events of a divorce."

We do not quarrel with these findings, all of which rely to a greater or lesser extent upon evidence within the record. However, the judge failed to make specific or detailed findings based on evidence within the record, apart from the children's own statements of preference, that separating the twins is in their best interests. In ordering their separation, the judge failed to consider powerful evidence which abundantly and unyieldingly supported their continued placement together. Instead, his articulated reasoning manifests an excessive reliance upon the preferences of two eleven year old children as to which parent each would like to live with. We, therefore, vacate the order, insofar as it awards each parent physical custody of one child, but pending further proceedings there shall be no alteration in the custody and visitation arrangements respecting the twins. The matter is remanded for further hearing regarding the physical custody arrangements that should be made for the two children. We express no opinion, whatsoever, on whether placement with the mother, the father, or some third party is preferable. It may well be that, during further proceedings, new evidence beyond the statements of one or both children concerning where they would prefer to live may be introduced that would support the present arrangement as being in each child's best interests.

*So ordered.*