MICHELINE MATTA *vs.* MANSOUR MATTA. No. 97-P-0007. May 15, 1998. *Divorce and Separation,* Child custody, Child support, Division of property. *Parent and Child,* Child support, Custody.

This case comes before us on the husband's appeal from a judgment of the Probate Court granting a divorce, ordering payment of child support and alimony and a division of property, and granting the parties joint legal custody of their minor child, with physical custody in the wife. We affirm.

The judge's findings, none of which is specifically challenged on appeal, may be summarized as follows. The husband and wife were married in Lebanon in 1969 and moved to Brockton in 1984. The wife is a victim of multiple sclerosis and has been confined to a wheelchair since 1991. She does not appear to have any hope of recovery or improvement. The couple own a three-family home in Brockton. After acquiring the home in 1983, they lived on the first floor with their two sons and rented the second- and third-floor apartments. At the time of trial, the home had a fair market value of $110,000 and was encumbered by a $90,000 mortgage. From 1978 through 1985, the wife worked at several jobs and was the family's main source of financial support. In 1985, the wife gave birth to the couple's third child, a boy named Clyde. Subsequently, her condition worsened to the extent that she became totally disabled. The husband is a self-employed auto mechanic whose income has been erratic and impossible accurately to determine. In September, 1993, the husband moved out of the marital home and the wife sought and obtained a restraining order pursuant to G. L. c. 209A. The order remained in effect for approximately one year. In October, 1993, the court issued a temporary order of support and the husband subsequently made nine weekly payments of $85.00. In April, 1994, the husband filed a successful ex parte motion to cease support payments. Due to her disability, the wife found it increasingly difficult to care for Clyde, and, in May, 1994, she moved to a small apartment in Brockton. By agreement of the parties in July, 1994, the husband returned to the marital home, where he and Clyde were living at the time of trial.

The judgment of the Probate Court, entered in November, 1995, awarded physical custody of the child to the wife and ordered the husband to convey his interest in the marital home to the wife and the wife to give the husband a ten-year, $10,000 note with interest at five percent. The husband's principal argument on appeal is that the judge's conclusion that the award of physical custody to the wife was in the best interests of the minor child is wholly without support in the record in light of the wife's concession, at trial, that she was unable to care for the couple's son due to her debilitating medical condition.

---

"When determining child custody awards in general . . . the guiding principle always has been the best interests of the child[]." *Ardizoni* v. *Raymond*, 40 Mass. App. Ct. 734, 738 (1996), citing *Rolde* v. *Rolde*, 12 Mass. App. Ct. 398, 404 (1981). "The decision of which parent will promote a child's best interests 'is a subject peculiarly within the discretion of the judge.' " *Bak* v. *Bak*, 24 Mass. App. Ct. 608, 616 (1987), quoting from *Jenkins* v. *Jenkins*, 304 Mass. 248, 250 (1939). See *Kendall* v. *Kendall*, 426 Mass. 238, 251 (1997). Here, while it is difficult to determine with certainty which parent is most likely to promote Clyde's best interests, "[o]n balance, [we cannot say that] the judge's decision, founded on a better knowledge of the parties than we can achieve from a cold record, is . . . plainly wrong." *Bak* v. *Bak*, *supra* at 617.

It is beyond question that the wife's condition is very serious. Contrary to the husband's assertions, however, at trial she did not concede her total inability to care for Clyde. Rather, she testified that she was unable to care for him at the time due to her living arrangements. She also stated that she wished to return to the marital home but could not afford to do so, and further indicated that she did not wish to "take the house away from" her son. Moreover, she opined that, with the help of her full time personal care attendant, she would be better able to care for Clyde, and expressed her desire for greater contact with him. In his closing, counsel for the wife reiterated her position, urging the judge to permit the wife to move back into the marital home with her son. In addition, although the report submitted by the court-appointed investigator recommends that physical custody remain with the husband, it also contains several observations and conclusions that support the judge's decision. See *Ardizoni* v. *Raymond*, 40 Mass. App. Ct. at 738 (judge may consider wide range of evidence, including report of court-appointed investigator, in determining best interests of child). Specifically, the report indicates that Clyde's school counsellor noticed negative changes in his appearance and preparation for class after he began living with the husband and describes the husband as "depressed, angry and in denial of [his] wife's condition." The report also emphasizes the wife's unselfish concern for Clyde and her desire to spend more time with him in order to "prepare [him] for her eventual . . . passing." In these unfortunate circumstances, we conclude that the record supports the judge's conclusion that "shared legal custody with physical custody in the wife, [and] the father to have visitation is in [Clyde's] best interest . . . ."

The husband also contends that the judge erred in ordering him to convey his interest in the marital home to the wife. He has not challenged the award of child support in the amount of $75.00 per week, or of alimony in the same amount once the child is emancipated. General Laws c. 208, § 34, "empowers probate judges incident to a divorce proceeding to employ broad discretion . . . in dealing with property and its equitable division." *Tanner* v. *Tanner*, 14 Mass. App. Ct. 922, 922 (1982), quoting from *Newman* v. *Newman*, 11 Mass. App. Ct. 903 (1981). "If a judge has made findings consistent with his obligations under G. L. c. 208, § 34 (*Rice* v. *Rice*, 372 Mass. 398, 402-403 [1977][; *King* v. *King*, 373 Mass. 37, 40 (1977)]), indicating that he has fairly considered [each of the mandatory] factors . . . and has not considered any irrelevant matter, his determinations as to . . . property division may not be reversed unless 'plainly wrong and excessive.' " *Redding* v. *Redding*, 398

Mass. 102, 107 (1986). "The judge's reasons for his conclusions, however, must be apparent in his findings and rulings." *Id.* at 108. *Dalessio* v. *Dalessio,* 409 Mass. 821, 830 (1991).

"The judge's findings of fact track generally the mandatory and discretionary factors enumerated in § 34." *Tanner* v. *Tanner,* 14 Mass. App. Ct. at 922. In his findings, the judge expressly considered the age, health, and station of the parties. The findings also indicate that the judge "weighed carefully [additional] considerations such as the . . . estate, skills, and employment op-. portunities of the parties, and their relevant income, assets, and prospects," as well as their relative needs and the length of their marriage. In addition, the judge found that prior to the onset of her illness, the wife was the greater financial contributor to the marriage and that the parties shared home and child care responsibilities until, as a result of her illness, the wife found it increasingly difficult to care for her son.

We also conclude that the judge's rationale for ordering the husband to convey his interest in the marital home to the wife "follows [logically] from his findings, which were based on ample evidence." *deCastro* v. *deCastro,* 415 Mass. 787, 794 (1993). It is clear from the findings that at the time of trial, the wife had a full-time personal care assistant. In his analysis, the judge explained that the wife would be able to care for Clyde, who was then ten years old, with the help of such an assistant if permitted to return to the marital home. The judge also noted that the wife and son "need[ed] the security of the . . . home." In addition, he acknowledged that the husband was entitled to payment of $10,000 because of his contribution toward the acquisition of the home. Finally, the judge noted that the husband was entitled to retain all of his own business assets. This division was neither plainly wrong nor excessive.

*Judgment affirmed.*

The case was submitted on briefs.
*George N. Asack* for Mansour Matta.
*Thomas M. Sullivan* for Micheline Matta.