NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-483

ADOPTION OF HARRY (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother and father each appeal from decrees of the Juvenile Court terminating their parental rights to their two children, Harry and John, and approving the adoption plans of the Department of Children and Families (department).  On appeal, the mother argues that the evidence did not clearly and convincingly establish that she was unfit, that her unfitness was not temporary, and that termination was in the children's best interests.  The father does not contest the judge's finding of his current unfitness, but like the mother, argues that it was error to conclude that his unfitness was not temporary, and maintains that termination was not in the best interests of the children.  Both parents also claim that the department failed to make reasonable efforts to reunify them with the children.  We affirm.

---

[1] Adoption of John.  The children's names are pseudonyms.

Background.  The mother and father are the parents of Harry (born 2014) and John (born 2016).  The children have two older half-siblings (half-siblings), who are the children of the mother and her former partner, Alan (a pseudonym).[2]  At the time of trial, the mother was in a relationship with Walter (a pseudonym).

In May 2018, the department filed the underlying care and protection petition and obtained emergency custody of the children based on evidence of substance misuse and domestic violence in the mother's home.  In April 2019, the department's goal for the children changed from reunification to adoption. An eight-day trial was held between October and December 2021; the mother attended only the first four of those days and the father attended the first two days and the final day.  After hearing testimony from five witnesses, including the mother and father, and admitting seventy-one exhibits, the judge found the mother and the father unfit, found that their unfitness was likely to continue, terminated their parental rights, and approved the department's proposed adoption plans for the children.  The judge further found that a significant emotional

_____

[2] Although all four of the mother's children were the subject of decrees terminating the mother's parental rights, a joint motion to dismiss that portion of the mother's appeal related to the two older children was allowed by this court.  Alan is not a party to this appeal.

relationship existed between each parent and the children and separately ordered posttermination visitation between each parent and the children.[3]

Discussion. 1. Termination of mother's rights. a. Mother's current fitness. "In deciding whether to terminate a parent's rights, a judge must determine whether there is clear and convincing evidence that the parent is unfit and, if the parent is unfit, whether the child's best interests will be served by terminating the legal relation between parent and child." Adoption of Ilona, 459 Mass. 53, 59 (2011). Clear and convincing evidence means that "[t]he requisite proof must be strong and positive; it must be 'full, clear and decisive.'" Adoption of Chad, 94 Mass. App. Ct. 828, 838 (2019), quoting Adoption of Iris, 43 Mass. App. Ct. 95, 105 (1997). "We review the judge's findings with substantial deference, recognizing her discretion to evaluate a witness's credibility and to weigh the evidence," Adoption of Nancy, 443 Mass. 512, 515 (2005), "and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, supra.

"Parental unfitness is determined by considering a parent's character, temperament, conduct, and capacity to provide for the

---

[3] The judge also ordered sibling and postadoption visitation.

child's particular needs, affections, and age." Care &
Protection of Vick, 89 Mass. App. Ct. 704, 706 (2016).
"Although 'stale information cannot be the basis for a finding
of current parental unfitness . . . [p]rior history . . . has
prognostic value.'" Adoption of Jacques, 82 Mass. App. Ct. 601,
607 (2012), quoting Adoption of George, 27 Mass. App. Ct. 265,
268 (1989). Here, the judge's factual findings as to the
mother's patterns of substance misuse, domestic violence, and
police involvement were not clearly erroneous and supported the
conclusion that she was unfit at the time of trial.

The mother's substance misuse began in the early 1990s and
led to many episodes of neglect. The department first became
involved with the mother in 2008 when a report was filed
pursuant to G. L. c. 119, § 51A (51A report), alleging neglect
of the half-siblings and drug use by the mother and Alan.
Between 2008 and 2014, several more 51A reports were filed
alleging drug use by the mother and Alan. The mother engaged in
methadone treatment from 2003 to 2013, and began Suboxone
treatment in 2013. However, despite the mother's being engaged
in treatment during this timeframe, both children were born
substance exposed; at least five 51A reports were filed between
2014 and 2018 due to the mother's substance misuse or
hospitalization. In March 2018, just prior to the children's

4

removal, the mother was using heroin, cocaine, fentanyl, and Percocet.

The mother entered an inpatient drug treatment facility in April 2018, and, in compliance with the department's action plan, attended Alcoholics Anonymous meetings and completed an intensive outpatient program (IOP) around April 2019. The judge made specific and detailed findings supporting her conclusion that, although the mother was willing to engage in treatment services, she struggled to benefit or learn from such efforts. Notably, the judge found that, after completing the IOP, the mother was involved in two drug-related encounters with police between May and June 2019, leading to an arrest and charges of possession of class B and class C controlled substances. Further, in June 2019, the mother continued to spend time with the father, a known drug user, despite acknowledging that associating with active drug users was a relapse trigger.[4] The judge was "entitled to consider the evidence of [the mother's] recent improvements within the context of her earlier and continuing deficits," Adoption of Jacques, 82 Mass. App. Ct. at 608, and did not err in concluding that the mother lacked

_____

[4] The judge did not credit the mother's claim that she had been sober since 2018 and that she did not know the father was using drugs in June 2019. This credibility determination was in the judge's discretion. See Care & Protection of Three Minors, 392 Mass. 704, 711 (1984).

5

insight into the impact of substance misuse on herself and the children.  See Adoption of Garrett, 92 Mass. App. Ct. 664, 673-674 (2018) (finding of unfitness not clearly erroneous where mother substantially complied with, but did not benefit from, tasks outlined in service plan).

The mother also has a long history as the victim of domestic violence.[5]  She filed three restraining orders against Alan and three against the father for domestic violence, and, between October 2018 and May 2019, had at least five encounters with police because of calls related to Walter.  The judge's determination that the mother failed to recognize the harm to the children from being exposed to violence in her intimate relationships was not clearly erroneous and was based on evidence of the mother's continuing violent relationship with Walter and the impact of domestic violence on the children.  See Adoption of Zak, 87 Mass. App. Ct. 540, 543 (2015) ("witnessing domestic violence, as well as being one of its victims, has a profound impact on children" [citation omitted]).  See also Custody of Vaughn, 422 Mass. 590, 595 (1996) ("a child who has

---

[5] In April 2018, police responded to the mother's home because the father alleged that Alan was "beating" the mother while the children were home.  In October 2018, Walter was arrested for domestic assault and battery after "slamming [the mother's] head into a door," and, two days later, was again arrested for violating the resulting G. L. c. 209A abuse prevention order.

6

been either the victim or the spectator of such abuse suffers a distinctly grievous kind of harm").

The mother has also demonstrated an inability to extricate herself from relationships punctuated by domestic violence. Although the mother's action plan tasked her with engaging in domestic violence support services and being open about the relationship with Walter, the mother attended support groups only inconsistently and attempted to conceal her ongoing relationship with Walter from the department. See Adoption of Rhona, 63 Mass. App. Ct. 117, 126 (2005) ("Evidence of parents' refusal to cooperate with the department, including failure to maintain service plans . . . is relevant to the determination of unfitness"). In finding the mother unfit, the judge appropriately considered the mother's pattern of domestic violence with multiple partners and her attempts to conceal her ongoing relationship with Walter.

Finally, the judge properly considered the mother's extensive criminal history, which began in 1991 and included convictions of, among other things, prostitution and possession of class B and E controlled substances, in finding that she was unfit at the time of trial. See Care & Protection of Frank, 409 Mass. 492, 495 (1991) ("evidence of prior convictions may be properly weighed in the balance [of parental fitness]").

7

b.  Mother's future unfitness.  In terminating parental rights, it is also "appropriate for a judge to consider whether, on the basis of credible evidence, there is a reasonable likelihood that the parent's unfitness at the time of trial may be only temporary" (citation omitted).  Care & Protection of Zeb, 489 Mass. 783, 788 (2022).  "Because childhood is fleeting, a parent's unfitness is not temporary if it is reasonably likely to continue for a prolonged or indeterminate period."  Adoption of Ilona, 459 Mass. at 60.  In light of the mother's longstanding struggles with substance misuse and domestic violence, the judge properly determined that the mother's unfitness was likely to continue into the indefinite future.[6] While we commend the steps the mother took to comply with the department's action plan, there was ample support for the conclusion that she lacked insight into her substance misuse and domestic violence.  She continued to misuse drugs and engaged in

_____

[6] The mother claims that it was error to admit, over objection, Walter's CARI in evidence.  When relevant to parental unfitness, a parent's criminal record is admissible, and judges may "consider the widest range of permissible evidence, including . . . evidence of each parent's present home environment."  Adoption of Hugo, 428 Mass. 219, 231 n.21 (1998), cert. denied sub nom. Hugo P. v. George P., 526 U.S. 1034 (1999), quoting Ardizoni v. Raymond, 40 Mass. App. Ct. 734, 738 (1996).  Given the judge's findings that Walter and the mother lived together, had been in a relationship since 2018, and, at one point, were engaged to be married, the judge did not abuse her "broad discretion" in determining that Walter's criminal record was relevant to the home environment.  See Nunes v. Duffy, 101 Mass. App. Ct. 460, 462 (2022).

8

a series of relationships with violent men.  See <u>Adoption of</u>
<u>Cadence</u>, 81 Mass. App. Ct. 162, 168-169 (2012), quoting <u>Care &</u>
<u>Protection of Bruce</u>, 44 Mass. App. Ct. 758, 761 (1998) ("These
patterns of behavior would place [the children] 'at serious risk
of peril' from neglect by [the mother] were [they] returned to
[her] custody").  Further, because a "condition which is
reasonably likely to continue for a prolonged indeterminate
period, such as alcohol or drug addiction . . . [that] makes the
parent . . . unlikely to provide minimally acceptable care of
the child is not a temporary condition," the judge did not err
in considering the mother's substance use disorder in
determining that her unfitness was likely to continue
indefinitely[7] (citation omitted).  <u>Adoption of Elena</u>, 446 Mass.
24, 31 (2006).

---

[7] The mother argues that the judge erred in drawing a negative
inference from her absence from trial, but not from the
father's.  "[A] trial judge has discretion to determine whether
to draw an adverse inference from a parent's absence. . . . In
determining whether to exercise that discretion, 'the judge as
fact finder' is to consider whether such an inference is 'fair
and reasonable based on all the circumstances and evidence
before' her."  <u>Adoption of Talik</u>, 92 Mass. App. Ct. 367, 372
(2017), quoting <u>Singh</u> v. <u>Capuano</u>, 468 Mass. 328, 334 (2014).
Here, the mother failed to offer explanations for her absences
from the fourth, fifth, and sixth days of trial.  Although the
mother claimed to be ill on the final day, the judge requested
her appearance on Zoom to assess the credibility of her excuse,
and the mother did not respond to the request.  See <u>Care &</u>
<u>Protection of Three Minors</u>, 392 Mass. 704, 711 (1984) ("It is
within the judge's discretion to evaluate the credibility of
witnesses and to make his findings of fact accordingly").

In light of the foregoing, we see no error in the judge's conclusion that the mother had "'grievous shortcomings or handicaps' that put the [children's] welfare 'much at hazard'" were they returned to her care. Adoption of Uday, 91 Mass. App. Ct. 51, 55 (2017), quoting Adoption of Katharine, 42 Mass. App. Ct. 25, 28 (1997).

c. Best interests of the children. "[T]he best interests analysis . . . requires a court to focus on the various factors unique to the situation of the individual[s] for whom it must act." Custody of a Minor, 375 Mass. 733, 753 (1978). "The standard for parental unfitness and the standard for termination are not separate and distinct, but 'reflect different degrees of emphasis on the same factors.'" Adoption of Nancy, 443 Mass. at 515, quoting Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption, 367 Mass. 631, 641 (1975). "In determining whether the best interests of the child will be served by issuing a decree . . . the court . . . shall also consider the plan proposed by the department or other agency initiating the petition." G. L. c. 210, § 3 (c). Here, the judge's findings as to the mother's future unfitness provided evidentiary support for the determination that termination was in the best interests of the children due to (1) the mother's inability to provide a safe environment, and (2)

10

her lack of insight regarding her actions.  See Adoption of Lisette, 93 Mass. App. Ct. 284, 296-297 (2018).

"Stability in the lives of children is important, particularly in a case that has continued for a long period of time in the hope that the [parents] could and would successfully rehabilitate [themselves]."  Adoption of Nancy, 443 Mass. at 517.  At the time of trial, the department's plan for John was adoption by his preadoptive family, where he was currently living.  Harry was living in a separate foster home, and that family was considering whether to adopt him.  The department's plan was adoption by his foster family or recruitment for adoption.  The judge found that both children were doing well in their placements, with Harry improving in the care of his foster family.  The judge also considered that the children would maintain consistent contact with their half-siblings, with whom they share a strong emotional bond.  We see no abuse of discretion.

2.  Termination of father's parental rights.  a.  Father's future unfitness.  On appeal, the father does not challenge his fitness at the time of trial but argues that the judge erred in finding that his unfitness would likely continue.  We are not persuaded.  The judge had ample evidence to support her finding that the father's extensive history of substance misuse, his criminal history, pattern of perpetuating domestic violence,

mental health struggles, and inability to regulate his emotions indicated that his unfitness would continue indefinitely.

The father began abusing prescription medication in 2009, and at the time of the children's removal, was "dabbling" in methamphetamine. Although his drug screens presented "no concerns" in the year after the removal, the father relapsed in the spring of 2019. He tested positive for cocaine in May 2019, purchased methamphetamine in the mother's home in May 2019, had "glassy eyes" during a family visit in June 2019, and admitted to having relapsed on cocaine and fentanyl in June 2019. Despite numerous stays in residential drug treatment facilities between June 2020 and February 2021, the father continued to use drugs in April 2021 and during trial. Accordingly, there was ample support for the finding that the father lacked insight into his substance misuse and that his unfitness was likely to continue. See Adoption of Elena, 446 Mass. at 31.

The father's criminal history dates to 1987 and includes convictions of assault and battery by means of a dangerous weapon, possession and distribution of controlled substances, larceny, criminal harassment, trespassing, and resisting arrest. As a result of his criminal activity, the father's life has been punctuated by periods of incarceration during which he did not visit with or speak to the children, including from August 2019 to October 2019, February 2020 to March 2020, and June 2021 to

12

September 2021.[8]  See Care & Protection of Frank, 409 Mass. at

495; Adoption of Frederick, 405 Mass. 1, 7 (1989) (judge may

consider "lengthy separation between a parent and child" in

making best interests determination).  The judge's findings

illustrated that the father's criminal history affected his

ability to be present in the children's lives and supported the

determination that his unfitness would likely continue

indefinitely.  See Adoption of Ilona, 459 Mass. at 60.

The judge also correctly considered the father's pattern of

domestic violence against women, including the mother.  Between

1993 and 2018, the father was the subject of restraining orders

filed by at least five different women.  During June and August

2019, the father was involved in a domestic dispute and was

reported for knocking a woman unconscious, sexually assaulting,

and threatening her.  Cf. Adoption of Carlos, 413 Mass. 339, 350

(1992) (in determining whether unfitness is temporary, judge may

consider evidence that provides "reason to believe that a parent

will correct a condition or weakness that currently disables the

parent from serving his or her child's best interests").

---

[8] The evidence amply supported the judge's findings that the
father had not seen the children in person in two years, that
Harry was "triggered" by video calls with the father, and that
the father made "inappropriate" comments to the children.  In
making the best interests determination, the judge was entitled
to weigh the evidence as she saw fit, and "[w]e do not sit as a
trial court to review de novo the evidence presented by the
parties."  Adoption of Paula, 420 Mass. 71, 730 (1995).

13

In addition, the judge identified concerns about the father's ability to manage his emotional and mental health. The father testified that, despite his efforts at anger management, his temper sometimes got the best of him. The father yelled at, swore at, and hung up on the social worker, and was described as "combative" and "argumentative" during phone calls with the department.

Despite having been diagnosed with attention deficit hyperactivity disorder and bipolar disorder, the father had been inconsistent with his mental health services since his 2019 relapse. See Adoption of Luc, 484 Mass. 139, 146-147 (2020). Here, the concern was "not that the [father] has mental health challenges, but that those challenges remained largely unaddressed," to the children's detriment. Id. at 146 n.17. See Adoption of Frederick, 405 Mass. at 9 (parent's mental disorder relevant to extent it affects parent's capacity to assume parental responsibility). Although the father made positive efforts with respect to his action plan prior to the department's goal change, he was unable to verify that he was seeing a psychiatrist at the time of trial. Especially when considered in combination with the judge's findings that the father "fail[ed] . . . to take responsibility for his behaviors" and "blam[ed] others," this evidence further supports the

judge's conclusion that the father's unfitness was likely to continue.

b. Best interests of children. In finding that termination of the father's parental rights was in the best interests of the children, the judge properly considered the father's "ability, capacity, fitness, and readiness," as well as the department's plans for the children. G. L. c. 210, § 3 (c). We see no error in the judge's conclusion that the children's best interests would be served by terminating the father's parental rights. The judge found that the father was unable to maintain consistency, stability, and safety for the children based on evidence that the father relapsed and was arrested on multiple occasions during the pendency of this action; was untruthful with the department about his treatment and housing; had multiple periods of noncontact with the department and his children; and continued to blame the department for the lack of reunification with the children. The judge also found that both children were improving in their placements. See Adoption of Oren, 96 Mass. App. Ct. 842, 846-847 (2020). The judge was not required to grant the father an "indefinite opportunity to reform," and considering the evidence that this unfitness was not temporary, "the judge . . . properly determine[d] that the child's welfare would be best served by ending all legal

15

relations between parent and child." Adoption of Cadence, 81 Mass. App. Ct. at 169.

The father contends that Harry's behavioral problems worsened in the department's care and that, because the department had not identified a preadoptive home for him, it was not in his best interests to terminate the father's parental rights. This argument is at odds with the judge's finding that Harry was doing well and was in a potential preadoptive placement. See Adoption of Ilona, 459 Mass. at 59 (appellate courts give "substantial deference" to decision that termination of parent's rights is in child's best interests, and "reverse only where findings of fact are clearly erroneous"). A fully formed adoption plan need not be developed before a parent's rights are terminated, so long as there is "sufficient information about the prospective adoptive placement so that the judge may properly evaluate the suitability of the department's proposal" (quotation and citation omitted). Adoption of Willow, 433 Mass. 636, 652 (2001).

3. Reasonable efforts. In deciding whether a parent's unfitness is merely temporary, "[a] judge may consider the department's failure to make reasonable efforts [to reunify the parent and child]." Adoption of Ilona, 459 Mass. at 61. On appeal, both parents argue that the department failed to make reasonable efforts at reunification. "It is well-established

16

that a parent must raise a claim of inadequate services in a timely manner."  Adoption of Daisy, 77 Mass. App. Ct. 768, 781 (2010), S.C., 460 Mass. 72 (2011).  "The parent should assert the claim 'either when the parenting plan is adopted, when [s]he receives those services, or shortly thereafter.'"  Adoption of West, 97 Mass. App. Ct. 238, 242 (2020), quoting Adoption of Gregory, 434 Mass. 117, 124 (2001).  "A parent cannot raise a claim of inadequate services for the first time on appeal, as the department would not have had the opportunity to address it."  Adoption of West, supra at 242.  Because the mother did not raise her reasonable efforts claim before trial, it is waived on appeal.  Even were the mother's claim not waived, there was ample evidence supporting the judge's determination that the department met its obligations and "complied with its duty to make 'reasonable efforts . . . to prevent or eliminate the need for removal [of the child] from the home.'"  Adoption of Ilona, supra, quoting G. L. c. 119, § 29C.

We will treat the father's claim as having been raised in the trial court because the judge explicitly found that the father raised concerns that the department was not doing anything to support him and or reunify the children with him. For approximately one year, the department's goal was reunification of the children with the mother and father.  The department provided the father with referrals to therapy and to

17

group programs and assigned him a parent partner for support with his substance misuse and mental health issues.  The father was progressing on his action plan but failed to meet with the department regularly for home visits, and he tested positive for substances in 2019.

Despite being willing to engage in services, both parents struggled to benefit from those services or show insight into their behavior and its effect on the children.  Based on both the mother's and the father's failure to demonstrate lasting benefits from the services the department provided them, we see no abuse of discretion in the judge's conclusion that reasonable efforts had been made at reunification.  See Adoption of Mario, 43 Mass. App. Ct. 767, 774 (1997) (department's duty to "preserve the biological ties between [a parent] and child" but that duty is "contingent upon [a parent's] fulfillment of [his] own parental responsibilities").

Decrees affirmed.

By the Court (Blake, Walsh & Hershfang, JJ.[9]),

Joseph F. Stanton

Clerk

Entered:  August 2, 2023.

---

[9] The panelists are listed in order of seniority.