NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-606

DUANE CARL NOYES, JR.

vs.

MARIA ROSE MANCUSO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Maria Rose Mancuso (mother) appeals from a Probate and Family Court modification judgment that, as relevant here, (1) awarded sole legal custody of the parties' nine year old daughter to Duane Carl Noyes, Jr. (father), while leaving in place a prior judgment's provision for shared physical custody; and (2) denied the mother's request to remove the child to Florida. The judge concluded that "[b]oth parties have made flawed parenting choices," but that, as between the two parties, the "[f]ather is better able to exercise sole legal custody for [the child's] benefit." On appeal, the mother argues that certain of the judge's findings were clearly erroneous and did not support the change in legal custody, that the change was not

in the child's best interests, and that the judge failed to consider the child's wishes regarding removal to Florida.  We affirm.

Discussion.  1.  Challenges to findings.  A judge's factual findings will "not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Mass. R. Dom. Rel. P. 52(a).  "In a bench trial credibility is 'quintessentially the domain of the trial judge [so that her] assessment is close to immune from reversal on appeal except on the most compelling of showings.'"  Prenaveau v. Prenaveau, 81 Mass. App. Ct. 479, 496 (2012), quoting Johnston v. Johnston, 38 Mass. App. Ct. 531, 536 (1995).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  Barboza v. McLeod, 447 Mass. 468, 469 (2006), quoting Marlow v. New Bedford, 369 Mass. 501, 508 (1976).  See Schechter v. Schechter, 88 Mass. App. Ct. 239, 245 (2015).  "It is the appellant's burden to show that a finding is clearly erroneous."  Allen v. Allen, 86 Mass. App. Ct. 295, 298 (2014).  Applying these standards, we conclude that the mother has not shown that any of the challenged findings is clearly erroneous.

First, the mother challenges finding 101, which states: "No credible evidence was presented that [the f]ather has a mental health diagnosis made by a provider or that [the f]ather's mental health impacts his ability to parent [the child]." Although the mother acknowledges the absence of evidence that the father has any formal diagnosis, she argues that there was evidence he is depressed to an extent that negatively affects his parenting ability. We are not persuaded.

The only evidence of the father's depression per se was the lay testimony of the paternal grandmother, which the judge expressly acknowledged in finding 100. The mother now points to various behaviors of the father that she attributes to depression, such as his failure to read messages the mother sent him using the court-ordered "Our Family Wizard" communication tool, and his allowing his voicemail box to become full and unable to receive new messages. The judge found facts corresponding to each of these behaviors (findings 129, 131, 155-156), but the mother cites no evidence connecting them to depression. The mother also cites the father's failure to search for work in his field and his failure to file tax returns for several years as evidence of depression, but again the mother cites no evidence connecting such behaviors to depression. Thus, we cannot say finding 101 was clearly erroneous.

3

Second, the mother challenges finding 76, which states that although the judge gave some weight to the child's having suffered a sunburn while in the father's care and the father's failure to tell the mother about it, "insufficient evidence was provided that [f]ather is not an appropriate caregiver overall." We understand the mother to be challenging the judge's overall finding that the father was an appropriate caretaker. There were ample subsidiary findings to support that overarching determination. Regarding the sunburn, the judge found that the child "has sustained normal childhood injuries in both parties' care" and gave little weight to that fact. More generally, she found that the father gets along well with the child (finding 105); does most of her laundry, buys her food, and makes dinner (findings 88, 97, 98); helps her with her homework, so that she particularly wants to work with him on harder assignments (finding 93); takes her on outings that they both enjoy (findings 105 and 106); and wants to take her to an orthodontist and an ophthalmologist (findings 137 through 140). The mother does not challenge these findings or the adequacy of the evidence underlying them.

Third, the mother challenges the judge's statement in finding 156 that ongoing conflict between her and the father had resulted in the child's "failing to see providers." The mother misinterprets this as a finding that the child "failed to see

4

any providers." To the contrary, in finding 127, the judge acknowledged that the mother "facilitates all of [the child's] medical appointments," and in findings 133 and 134, she acknowledged the mother's discussion with the child's healthcare provider regarding the child's vaccination status.

Fourth, and in a similar vein, the mother challenges that part of finding 157 stating that the father has "identified the parties' conflict as the reason that he has not brought [the child] yet" to see certain appropriate medical providers. The mother misinterprets this as a finding that she has prevented the father from bringing the child to see those providers. But the judge made no such finding; rather, she found only that the father viewed his conflict with the mother as his reason for not obtaining that medical care for the child. The father's testimony supported this finding. Notably, the judge also concluded that, although the father was "not blameless" for "the parties' inability to make these decisions jointly," "he has not escalated the parties' conflict to the extent that [m]other has."

Fifth, the mother challenges finding 159, stating that "it is in [the child's] best interest that [f]ather have sole legal custody." We view this as the judge's ultimate finding or conclusion and address the mother's challenge to it infra.

5

Sixth, the mother challenges finding 89, which states as relevant here that the father "credibly testified that he is [the child's] primary caretaker during his parenting time, not [his mother]." The mother argues that this finding is undermined by what she claims is the father's testimony that, "at times during his parenting time, he is working four days in a row." In the passage of testimony that she cites, however, the father described his work schedule only for the week before trial; he did not testify that he regularly worked four days in a row. We are not "left with the definite and firm conviction that a mistake has been committed" in finding 89, Barboza, 447 Mass. at 469, quoting Marlow, 369 Mass. at 508, particularly where it is expressly based on the judge's credibility determination. See Prenaveau, 81 Mass. App. Ct. at 496.

2. Change in legal custody. The mother challenges the judge's conclusion that it was in the child's best interests for the father to exercise sole legal custody. In her brief, the mother expressly agrees with the judge's conclusions that the parties' relationship had deteriorated to the point that they were no longer capable of jointly making parenting decisions and that this was a material change in circumstances warranting a modification of the existing shared legal custody arrangement. The mother contends, however, that the father's "demeanor and behavior . . . have shown that he is no longer a suitable

6

caretaker" for the child, meaning, at least implicitly, that she is the only parent suitable to exercise legal custody.  M.Br.18. We are not persuaded.

"The decision of which parent will promote a child's best interests is a subject peculiarly within the discretion of the judge" (quotation and citations omitted).  Ardizoni v. Raymond, 40 Mass. App. Ct. 734, 738 (1996).  The best interests determination is "a classic example of a discretionary decision" as to which "much must be left to the trial judge's experience and judgment" (quotations and citations omitted).  Adoption of Hugo, 428 Mass. 219, 225 (1998), cert. denied sub nom. Hugo P. v. George P., 526 U.S. 1034 (1999).  We therefore review the judge's custody decision for an abuse of discretion, which is defined as "a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (quotation and citations omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

We have already rejected, in our discussion above, the mother's challenge to the judge's determination that the father was an appropriate caretaker.  The mother nevertheless points to additional evidence suggesting that the father was a less than ideal caretaker, including his lack of awareness of a mental health crisis suffered by the child; his lack of preparation for

7

trial; his lack of awareness of or contact with several of the child's medical providers; his reluctance to share parenting time;[1] and his assertedly lax approach to the child's schooling.[2]

These arguments overlook the judge's overall assessment that "[b]oth parties have made flawed parenting choices"; that "[n]either party is faultless"; and that the judge was forced to choose between "limited alternatives, all of which . . . have imperfections."  At oral argument the mother acknowledged that the judge, in deciding who should have legal custody, had considered all of the factors she was required to consider.  Our role when reviewing for an abuse of discretion is thus not to reweigh the evidence but to determine whether the judge's choice

_____

[1] The mother argues that her parenting time "would be nightmare were [f]ather the sole custodian," because he could not be trusted to afford the mother adequate parenting time during holidays, and because he does not favor giving her as much parenting time during school weeks as she wants.  But this ignores that the judge viewed it as "imperative that [the child] have frequent and equal parenting time with both parties." Therefore, the modification judgment included detailed provisions governing holiday parenting time, and an additional provision regarding parenting on school days.  The mother does not challenge the fairness or the enforceability of these provisions.

[2] The mother notes that the father had allowed the child to log in to do her at-home schoolwork after 9 P.M.  The judge expressly gave this factor "comparatively little weight," given that she "usually . . . finish[ed] her schoolwork around 7:00 P.M."

8

was "outside the range of reasonable alternatives." L.L., 470 Mass. at 185 n.27. Here, we cannot say that it was.

3. Child's wishes regarding removal. Finally, the mother contends that, in denying her request to remove the child to Florida, the judge failed to consider the child's wishes. But, as the mother acknowledged at oral argument, there is no evidence in the record that the child preferred to move to Florida. Rather, the record reflects only that the child wanted the judge to know about her friends in Florida and of her worries about how she could remain in contact with them and see them.

Even if the child had expressed a desire to move to Florida in the custody of the mother, a child's statements of custody preference "must be treated with caution," and "the preference of a younger child is not given decisive weight" (quotations and citations omitted). Ardizoni, 40 Mass. App. Ct. at 738. In Ardizoni, we concluded that a trial judge had placed "excessive reliance upon the preferences of two eleven year old children." Id. at 741. In another case, we concluded that the wishes of a ten year old child were not controlling. Bak v. Bak, 24 Mass. App. Ct. 608, 617 (1987). Here, at the time of the modification trial, the child was only nine years old.

The judge gave detailed consideration to whether removal was in the child's best interests, including how it would affect

9

her relationship with the father and her close relationships with his extended family, and how her living situation in Florida would be cramped and put her at risk of exposure to domestic violence.  The judge was not required to give the child's attachments to her friends in Florida more importance than the factors weighing against removal.  The judge did not abuse her discretion by denying removal in these circumstances.

Modification judgment dated August 17, 2023, affirmed.

By the Court (Sacks, Hershfang & Tan, JJ.[3]),

Clerk

Entered:  May 12, 2025.

---

[3] The panelists are listed in order of seniority.